STATE v. JOHN H. CREDLE.

*Injury to live stock, sufficiency of indictment—Notice, proof of contents— Criminal Act, intent— Widow's year's support.*

1. An indictment under THE CODE, § 1068, for injury to live-stock, in which the animal alleged to have been injured is described as a "certain cattle beast," is sufficiently definite.

2. On trial of such indictment, the contents of a notice posted by prosecutor forbidding all persons trading for or buying his cattle, may be proved by parol, without showing the loss or destruction of the paper.

3. The fact that a criminal offence was committed openly and without secrecy goes to the jury to be considered by them upon the question of the existence of a felonious intent. It does not necessarily disprove it.

4. The charge of the court in this case, approved.

(*State* v. *Stanton,* 1 Ired., 424; *State* v. *Brown,* 1 Dev., 137; *State* v. *Clark,* 8 Ired., 226; *State* v. *Turner,* 66 N. C., 618; *State* v. *Godet,* 7 Ired., 210; *Satterfield* v. *Smith,* 11 Ired., 60; *Pollock* v. *Wilcox,* 68 N. C., 46; *Wilson* v. *Derr,* 69 N. C., 137; *State* v. *Capps,* 71 N. C., 93, cited and approved.)

INDICTMENT for injury to live stock tried at Spring Term, 1884, of BEAUFORT Superior Court, before, *Gudger, J.*

The indictment preferred in the inferior court is substantially as follows: The jurors, &c., present, that the defendant with force and arms "did unlawfully and wilfully pursue and kill a certain cattle beast, the property of Nancy Ribbitts, with the intent then and there unlawfully and feloniously to convert the same to his use," contrary, &c. The jury found the defendant guilty, and from the judgment pronounced he appealed to the superior court.

In the statement of the case made by the chairman of the inferior court (E. S. Simmons), it appears that the prosecutrix was the widow of Henry Ribbitts who was the owner of a lot of cattle, and that she claimed title thereto under an assignment of her year's support, which shows, among other things allotted to her, a " lot of cattle running at large in Bath township;" and she testified that defendant never set up any claim to the cattle until after her husband's death ; that defendant sent her ten dollars by one Keech who told her that defendant had bought the cattle, and that this sum was the balance due on that account.

One Muse, a witness for the state, testified that on the day he heard of Ribbitt's death, the defendant said he was going to "gobble up Ribbitt's cattle," and upon being asked "how," the defendant replied, " I have been talking to Sam Warren and he says he can write a bill of sale, and has promised to write it as soon as he can find out the day that Ribbitts was at Asa Wilkinson's, and am to give one third of the cattle to Warren who was to witness it." It was in evidence that Ribbitts was at Wilkinson's about three weeks before his death.

The witness further testified that defendant told him to say he (defendant) had bought the cattle from Ribbitts and paid fifteen dollars and owed ten dollars more, and that defendant afterwards told witness that he himself had written

41

the bill of sale, and had Ribbitts' red bull penned in Edmund Moore's yard, and that he got Keech and Lanier to go there and kill him; that these cattle were in Bath township and the witness never heard of Ribbitt's having any other cattle.

The witness also testified that he told defendant he had heard that Ribbitts had posted notices forbidding all persons from interfering with his stock. And another witness (Campbell) testified that he saw a notice posted with Ribbitts' name signed to it, though he did not see him post it. Defendant objected to his stating its contents. Objection overruled. The witness then stated that the " contents of the notice forbid all persons trading for or buying his cattle."

The witnesses for defendant testified that shortly before Ribbitts' death, the defendant paid him fifteen dollars for the cattle, and that Ribbitts said to defendant, "you owe me ten dollars, and when you pay that, all the cattle are yours;" that the ten dollars was carried to the widow, as testified to above, and that she refused to receive it.

The testimony of the defendant himself was to the effect that he had bought the cattle of Ribbitts, and that he had killed some of them before the death of Ribbitts, without objection from him; that some one told the defendant while at his house, that the red bull was penned by Moore's boys, in Moore's yard, and defendant sent Keech there in the day time to kill him. The defendant denied making the statement to the witness Muse, in reference to the bill of sale, but said he had a right to the cattle and could prove it, and that Ribbitts told him he had posted notices warning persons not to interfere with his stock.

The defendant asked the court to charge the jury that there was no evidence that defendant pursued and killed the cattle beast; that if he sent Keech to kill the bull in Moore's pen, the defendant is not guilty under this indict-

ment; that it must appear that defendant participated in the killing with a felonious intent, and unless he did so, he cannot be convicted of aiding, counselling or commanding; that there is no evidence the title to the cattle has been legally conveyed to the prosecutrix. These instructions were refused.

The defendant also asked the court to charge that an open public commission of an act, without any attempt at secrecy, disproves any felonious intent. Refused.

The defendant also asked the following: That if defendant believed he had a right to the cattle beast, and had it killed under that belief, whether he actually had the title or not, he is not guilty. This instruction was given.

Upon the trial of the case in the superior court, and in addition to the errors alleged in the above statement, the defendant insisted that the indictment was defective, in that it used the word "cattle beast" and failed to state the kind of cattle beast, and that therefore the court could not proceed to judgment. The motion in arrest was overruled and the judgement of the inferior court was affirmed. From this ruling the defendant appealed to this court.

*Attorney-General,* for the State.
No counsel for defendant.

MERRIMON, J. THE CODE, § 1068 provides that, "if any person shall pursue, kill or wound any horse, mule, ass, jenny, *cattle,* hog, sheep or goat, the property of another, with the intent unlawfully and feloniously to convert the same to his own use, he shall be guilty of a misdemeanor, and shall be punishable, in all respects, as if convicted of larceny, though such animal may not have come to the actual possession of the person so offending. And all persons commanding, counselling, advising, aiding and abetting any of such unlawful acts shall be punished in like man-

ner, and may be prosecuted alone, or with the principal actor."

The indictment in this action is founded upon the above recited statute, and it charged that the defendant "did unlawfully and wilfully pursue and kill a certain *cattle-beast*, the property of Nancy Ribbitts, with the intent then and there unlawfully and feloniously to convert the same to his use," &c.

Upon the trial, the jury rendered a verdict of guilty, and thereupon the defendant moved in arrest of judgment, assigning as ground for his motion, that the indictment did not sufficiently charge any offence under the statute, and that the charge was too vague and uncertain to warrant a conviction. The court overruled the motion, and give judgment for the state.

Generally, in indictments, it is sufficient and proper to charge statutory offences in the words of the statute creating and defining them, as nearly as practicable. To this rule, however, there are some exceptions. Where, for example, the statute employs a general term, very broad in its comprehension, to designate and describe the objects to be protected by it, it is necessary in such case to specify the particular species or class in respect to which the offence is charged. As where a statute made it indictable to kill or steal "cattle" generally, an indictment charging one with killing "cattle" would not be sufficient; it ought to be set forth and specify the kind of cattle, as a horse, a mule or cow. *State* v. *Stanton*, 1 Ired., 424; Ros. Cr. Ev., 374, 375; Arch. Cr. Pl., 326. This is necessary in order to give the party charged such information as will enable him to learn what offence he is charged with, to prepare his defence, and to establish such record of the matter as will enable him to defend himself successfully against any subsequent prosecution for the same criminal act.

The offence should be charged in the indictment with

reasonable certainty as to its nature, and the material con-
stituent facts should be specified with like precision.  What
is such reasonable certainty and precision depends very
much upon the nature of the offence.   Some classes of
offences are much more definite in their nature, and are
capable of being specified with more precision than others.
Perhaps there is no case in which it is not necessary to re-
sort to facts and circumstances, outside of the indictment
and the record, to ascertain and indentify the offence charged.
Hence, the rule is that the offence should be charged with
reasonable (not absolute) certainty in all material respects.

It has been held in this state, that it is sufficiently cer-
tain to charge in the indictment the larceny of a " parcel of
oats " of the goods and chattles, &c., *State* v. *Brown,* 1 Dev.
137 ; a " bull tongue," meaning a species of plow-share,
*State* v. *Clark,* 8 Ired., 226 ; " one turkey," *State* v. *Turner,* 66
N. C., 618 ; "a hog," *State* v. *Godet,* 7 Ired., 210.

If the statute under consideration had employed only the
word " cattle " in describing the various species of animals
to be protected, then the motion in arrest of judgment ought
to have been sustained.   In such case the indictment ought
to specify at least the species of the animal killed or in-
jured, as a horse, an ox, a sheep, a goat.   The term " cattle "
is sometimes used in statutes in a sense broad enough to
embrace all such animals. · But it is not used in so compre-
hensive a sense in the statute before us : it enumerates by
name the classes of quadruped animals usually kept on the
farm, and the term " cattle " is used, in a restricted but well
understood sense, to designate only that class of animals
belonging to the bovine species, as the ox, the cow, the bull,
the heifer.   So that, when reference is made to the stat-
ute, and cattle are mentioned, it is at once and certainly
known what species of animals is referred to.   And so,
where in an indictment the defendant is charged with kill-
ing a " cattle beast " under the statute in question, he

knows at once what class of animals the beast belongs to, as certain as if the charge specified a cow, or an ox, or a bull. Such a designation of the animal alleged to be killed or injured, affords the party indicted reasonable information to enable him to learn the kind of animal he is alleged to have killed or injured, to prepare to defend himself against the charge, and to make good his defence in case he should be a second time indicted for the same criminal act.

The charge of killing "cattle" is greatly narrowed in its compass under this statute. "Cattle" does not embrace all species of farm animals: it embraces only one species well known, to-wit, the bovine species, for other species of cattle is specially enumerated in it.

It is true the pleader might have made the charge more definite by specifying that the animal alleged to have been killed was an ox, or a cow, or a "red bull," but the law does not require the charge to be made as definite and precise as possible, but to be made with reasonable certainty.

While we think the pleader should ordinarily make the charge as specific as possible, we think that in this and in like cases the charge is sufficiently definite. The language of the statute is substantially adopted. The description "cattle beast" is, it seems, employed to designate the singular number of the plural noun "cattle." The defendant saw or could see, at once, that he was charged with killing a cow, an ox, a bull or heifer of the prosecutrix. This, in our judgment, was notice sufficient to enable him to prepare his defence, and, if he should be indicted a second time for the same criminal act, to make good his defence under a proper plea. He could show that he had before been convicted or acquitted of the charge of killing a "cattle beast" of the prosecutrix. *People* v. *Littlefield*, 5 Cal., 355.

A witness for the prosecution was allowed to testify that he saw a "notice" posted by Ribbitts with his name signed to it. He did not see him post it, but "the contents of the

notice forbade all persons trading for or buying his cattle."
The defendant objected to his stating the *contents of the notice.* The court overruled the objection and the defendant
excepted.

It seems that the objection was not to the relevancy and
competency of the "notice" as evidence, but to speaking of
its contents in its absence. Why this objection was made
does not appear in the record, but viewing the objection in
the most favorable light for the defendant, we take it that
the "notice" was not produced, and the objection was to
speaking of its contents in its absence; to proving its contents by parol evidence without showing its destruction or
loss.

In general, where an agreement is reduced to writing and
is intended by the parties signing it to contain and to be
evidence of such consent or agreement, or whenever there
exists a written document, which by the policy of the law
is considered to contain the evidence of certain facts, such
instrument is regarded and treated as the best evidence of
the agreement or facts it records; and unless it be in
the possession of the opposite party, and notice be given to
him to produce it, or unless it be proved to be lost or destroyed, secondary evidence of its contents is not admissible.
But there are many exceptions to this general rule.

Thus, where a memorandum of agreement was drawn up
and read over to the defendant, which he assented to but
did not sign, it was held that the terms mentioned in it
might be proved by parol. *Doe* v. *Cartwright,* 3 B. & A.
326, (5 Eng. C. L., 306).

So, where a verbal contract was made for the sale of
goods, and it was afterwards put in writing by the vendor's
agent, it was held that such contract might be proved by
parol.

So also, facts may be proved by parol, though a narrative
of them may be reduced to writing. In an action for trover,

to prove the demand the witness stated that he had verbally required the defendant to deliver up the property, and at the same time served upon him a notice in writing to the same effect. LORD ELLENBOROUGH held in *Smith* v. *Young* 1 Camp., 439, that it was unnecessary to produce the written notice.

Where, on an indictment for an unlawful assembly, the question was, what were the inscriptions and devices on certain banners carried at a public meeting, it was held that parol evidence of the inscriptions was admissible without producing the banners themselves. *Hunt's case,* 3 B. & A., 566, (5 Eng. C. L., 327); Roscoe Cr. Ev., 3 (4th Am. Ed.). To the like effect are *Satterfield* v. *Smith,* 11 Ired., 60; *Pollock* v. *Wilcox,* 68 N. C., 46; *Wilson* v. *Derr,* 69 N. C., 137; *State* v. *Capps,* 71 N. C., 93. The exception cannot be sustained.

The " notice," whether written or printed was collateral to the issue; the defendant was not a party to it; it contained no agreement between himself and any other person; it did not purport to be evidence of a contract between parties; it did not recite facts agreed upon by parties; it was not intended to be preserved, but to serve a temporary purpose and disappear; it was not to be lodged with any person for safe keeping; it was a loose, casual paper, and what it contained might be proved like any other fact or event. The rule that a written instrument cannot be contradicted, modified or added to by parol proof, has no application to it. It was competent to speak of it and what it contained, without producing it or showing that it was destroyed or lost.

This exception does not present any question as to the competency of the evidence, if the notice had been produced, and we are not at liberty to decide any question not presented by the record.

The defendant was not entitled to the special instructions prayed for and denied by the court.

Much of the evidence tended to prove that the defendant

commanded, counselled and encouraged the killing of the bull mentioned, and to support the charge in the indictment. On the contrary, the defendant contended there was evidence tending to show that the bull was his, and he had given instructions to kill him, in good faith, claiming him as his own property. It was fairly left to the jury to say by their verdict whether or not the defendant did so act in good faith. The court charged the jury that if the defendant believed he had a right to the animal, and had it killed under that belief, whether he actually had it or not, he is not guilty. This charge was favorable to the defendant. There was evidence to be considered and weighed by the jury, going to show that he commanded and counselled the killing of the bull as charged; and the fact that he was at his home and not present at the time the bull was killed, made no difference; he was a principal in the offence, if guilty at all, and he might, by the common law as well as by the statute, be indicted with the principal actor, or alone.

The fact that the bull was killed "openly and without secrecy" in Moore's yard under instructions from the defendant, is no justification or excuse for the killing, if the motive were such as that charged in the indictment. The language of the statute is plain, strong and without qualification. It provides that "if any person shall pursue, kill or wound," &c., whether secretly or openly, with the felonious intent specified, he shall be guilty of the offence created and defined by the statute. The fact that the act was done "openly and without secrecy" may be evidence tending to show the absence of a felonious intent, but this does not necessarily disprove it. It is evidence to be weighed by the jury.

There was evidence going to show that the bull was assigned to the prosecutrix as part of her year's support, and if the bull was of the cattle running at large in Bath township, as described in the assignment of the year's support of

the prosecutrix as widow of her late husband (and there was evidence tending to show this), this was sufficient. The cattle, although running at large, were constructively if not actually in the possession of the intestate at the time of his death, and were of his estate at the time the year's support of the widow was assigned to her, and the title passed to her by virtue of such assignment.

We think that the defendant has no just ground of complaint that the court failed to give him the benefit of the special instructions prayed for. There was evidence tending to support the charge in the indictment. There was likewise evidence tending to support the defence. The result turned mainly upon the facts, and they were fairly submitted to the jury upon the plea of not guilty. With their verdict we have no jurisdiction or power to interfere, as the case comes before us. The judgment must be affirmed. Let this opinion be certified to the superior court of Beaufort county, to the end that it may proceed further in the action according to law.

No error.                                                        Affirmed.