E. P. JONES v. MANFRED CALL, et al.

*Evidence—Lost Paper—Case on Appeal—Contract—Copartnership—New Trial—Judge's Charge—Agency.*

1. The evidence of the destruction or loss of a paper, preliminary to letting in proof of its contents, is addressed to the Court, and its finding, when there *is any* evidence, is conclusive, and not reviewable on appeal.

2. The rule requiring the production of the writing itself as the best proof of what it contains, does not extend to mere notices which persons are not expected to keep.

3. The admission of irrelevant evidence, if it does not appear to have misled or prejudiced the jury, will not be deemed erroneous.

4. If an appellant sends up with the case on appeal exceptions thereto which prove not to have been passed on by the Judge who settled the case, they will be considered as having been accepted.

5. Where a party to a special contract is prevented by the other party from performing his part, he may bring his action upon a *quantum meruit.*

6. Where there is *any* evidence upon a controverted issue, it should be submitted to the jury.

7. What constitutes a copartnership is matter of law, and a participation in profits and losses of a business in which persons jointly engage is the ordinary test.

8. A material instruction to the jury upon an immaterial issue will not be considered material unless it prejudiced the action of the jury in passing upon the other issues.

(*State* v. *Efler*, 85 N. C., 585; *State* v. *Credle*, 91 N. C., 640; *Bridgers* v. *Bridgers*, 69 N. C., 451; *Kidder* v. *McIlhenny*, 81 N. C., 123; *Williams* v. *Kivett*, 82 N. C., 110; *Gidney* v. *Moore*, 86 N. C., 404; *Carrier* v. *Jones*, 68 N. C., 130; *Bank* v. *McKeithan*, 84 N. C., 582; *Commissioners* v. *Lash*, 89 N. C., 159; *State* v. *Arnold*, 13 Ired., 184; *Gaylord* v. *Respass*, 92 N. C., 553; *Owens* v. *Phelps*, 92 N. C., 231, cited and approved).

This was a CIVIL ACTION, tried before *McKoy, Judge*, at Spring Term, 1884, of the Superior Court of GUILFORD county.

There was a verdict and judgment thereon for the plaintiff, from which the defendant Call appealed.

The plaintiff's action is to recover compensation for services rendered in an agency undertaken and prosecuted to introduce to public favor, and make sale, of certain machines used in the manufacture of tobacco, which had been invented by, and patented to the defendant J. L. Jones, and by him assigned to the defendant Call, to secure an indebtedness due to him.

The complaint alleges that at the time of the transfer of the patent rights, it was agreed between the parties thereto, that the assignor might still manufacture and sell the machines as before, and pay over to the assignee Call, the net proceeds, which were to be applied in reduction of the secured debt, until it was paid off, when the patents were to be restored; that accordingly the said Jones entered upon the business in Richmond, and by and with the knowledge and consent of Call, employed the plaintiff for the purpose of advertising and selling the machines as they were made, and he at once set out in the execution of the assumed agency; that the defendant Glenn afterwards acquired under contract with Jones, an interest in the patents; and in February, 1878, associated himself with the other defendants, assuming all outstanding liabilities of the common concern with them;

that the plaintiff, with the knowledge and consent of defendants Call and Glenn, and at the request of the said J. L. Jones, who had authority from them to retain him in their service, continued in the work of his agency with great success and profit to them, until the last of November, 1878, when his operations were put an end to and his agency revoked by Call, whereby he was prevented from securing an interest in the patents, which he was to have as soon as the profits were sufficient to discharge the debt and exonerate the patents from liability therefor; that the net proceeds of the sales were duly accounted for and paid over to the defendant Call by his associates, the plaintiff only receiving an inconsiderable sum, not in excess of two hundred dollars in remuneration for his services.

At Fall Term, 1881, when the complaint was filed, the defendant Call put in a demurrer thereto, assigning certain specified causes, which were overruled, as was stated on the argument here, but on this point the record is silent, and at the same term his answer was filed, which in legal sequence supersedes the demurrer.

The answer controverted the material allegation of the complaint upon which the plaintiff's right of action depended, and issues were eliminated therefrom and submitted to the jury, twelve in number, whereof those numbered from 1 to 7 were offered by the plaintiff, and five numbered from 8 to 12 by the defendant.

1st. Was the plaintiff employed by the defendant John L. Jones and the defendant Call, to sell, advertise and introduce upon the market the machines referred to in the complaint?

2nd. Did the plaintiff render services to the said defendants according to his said contract with them, and if so, what was the value of his services so rendered?

3rd. Was the plaintiff employed by the said defendants and R. W. Glenn, so to sell, advertise and introduce said machines, after the last named became interested in the patents?

4th. Did the plaintiff render services to said defendants and Glenn according to his undertaking with them, and if so, what was the value of such services?

5th. Was there a contract between plaintiff and the defendants Jones and Call, or either of them, whereby the plaintiff was to acquire an interest in the patents referred to in the complaint?

6th. Was such interest damaged, and if so, was it by conduct of defendant Call?

7th. If so, to what amount?

8th. Was defendant Call a partner with defendant J. L. Jones?

9th. Was defendant Call a partner with R. W. Glenn?

-10th. Was defendant Call a partner with J. L. Jones and R. W. Glenn?

11th. If employed, and plaintiff rendered service to said J. L. Jones and Call, how much has been paid plaintiff for such services up to fifth February, 1878?

12th. If employed, and plaintiff rendered services to J. L. Jones and Call and Glenn to October, 1878, how much had been paid plaintiff for said service?

The Court, by consent, wrote the answer to the 5th issue thus: "Statute of frauds pleaded by defendant. The jury need not answer." And, with like consent, answers to issues 6 and 7 were dispensed with.

The defendant Call moved to submit the following issues, to-wit:

1st. Did Manfred Call, the defendant, employ E. P. Jones, the plaintiff, as his agent to advertise and sell the machines during any portion of the years 1877 and 1878?

2nd. If so, did the plaintiff render the services, and what were such services worth?

3rd. If he was so employed and rendered such services, was he paid for the same out of the proceeds of the sales of the machines or otherwise?

The Court refused the motion, and defendant Call excepted.

The defendant Call, who alone seemed to contest his liability to the plaintiff, insisted before the jury in substance, that no contract had been shown by which he had employed or was bound to pay for the plaintiff's services; and if any such was entered into between him and the other defendants, it was not with his sanction or concurrence; nor were there any such partnership relations formed between them as in law would authorize them, or either of them, to contract for and bind him in the premises.

The defendant Call asked the following instructions in writing to be given to the jury:

1st. That if the jury should believe from the evidence that E. P. Jones was not employed as an agent to sell machines, but rendered such services voluntarily and not intending to charge for same at the time, expecting to receive for such services an interest in the patents and real estate in Greensboro, then he cannot recover in this action of defendant Call.

2nd. That if the jury should believe from the evidence, that E. P. Jones was employed as a sub-agent for the sale of machinery, and was to be paid out of the gross sales, then the plaintiff cannot recover of the defendant Call in this action.

The Court gave these instructions as requested, but added after the second instruction as follows, to-wit: "Unless the defendant Call violated his agreement, and wrongfully prevented him from getting pay for his services in accordance with the first understanding and agreement, that if Call should have violated his contract and destroyed his chances of getting pay, the plaintiff could recover what his services were reasonably worth." To this addition of the Court to the instructions prayed the defendant Call excepted.

The Court, among other things, charged the jury: If there was a co-partnership, then the employment of an agent to transact the business of the co-partnership, by one partner, will bind all the partners. If employed by the authorized agent of Manfred Call, while acting within the scope of the authority conferred by said Manfred Call upon said agent, then Manfred Call would

be bound by the act and employment of said agent just as if employed by Call himself.

Whether there was a co-partnership or not, depended upon the question, whether it is shown to the jury that Manfred Call did share or participate in the profits of the manufacture of the tobacco machines described in the complaint, for the ordinary test of a person being a partner, is his participation in the profits of the business, and there can be no instance in which there can be a participation in them "as profits," in which every person having a right to share in them, is not thereby rendered a partner.

The jury found all the issues in favor of the plaintiff.

The defendant Manfred Call moved for a new trial and a *venire de novo*.

Motion was overruled, and the Court gave judgment upon the verdict.   The defendant appealed.

The following are the grounds of appeal:

1. That the Court allowed the witness E. P. Jones to speak of the contents of a written notice of date Dec. 11, 1877, purporting to revoke his agency, in the absence of the paper itself, no sufficient ground having been laid for the same by giving notice, so that parol evidence might have been given of the contents.

2. That the Court allowed copies of two letters dated Oct. 11th, 1878, addressed by Call to Tanner & Co., to be read in evidence to the jury after objection, without requiring the production of the originals on notice to produce them.

3. The introduction of letters dated May 3, 1878, addressed to R. W. Glenn, in reference to sale of patents in Europe, on the ground that it was irrelevant to the issues.

4. The exclusion by the Court of a portion of the deposition of Moses Call, as set out in the fourth exception to the evidence in the case.

5. That the Court added to the second of the written instructions asked for by the defendant Call, the words " unless the defendant Call violated his agreement and wrongfully prevented him from getting pay for his services in accordance with the first

understanding and agreement. That if Call should have violated his contract and destroyed his chances for getting pay, the plaintiff could recover what his services were reasonably worth."

6. That the Court refused the motion of defendant to strike out the issues which had theretofore been drawn up under the direction of the Court as the proper issues of the case, and submit in lieu thereof the three issues then proposed by the defendant, set out in the case.

7. That the Court did not charge the jury as requested by the defendant Call, that there was no evidence of any contract, expressed or implied, between the plaintiff and himself by which he became liable to pay for plaintiff's services.

8. Exceptions to Judge's charge to the jury :

1. Defendant excepts to Judge's charge as a whole, as it tended to mislead the jury.

2. The Court left it to the jury to say from the evidence whether or not there was a co-partnership between John L. Jones and Manfred Call in 1877, or one between Call and R. W. Glenn and John L. Jones in 1878, whereas there was no such evidence to be left to the jury.

3. That the Judge erred in leaving it to the jury to find upon a *quantum meruit*, the value of plaintiff's services.

4. That his Honor erred in recapitulating to the jury after he had withdrawn the second cause of action and excluded the evidence bearing thereon, the following allegations of the plaintiff, to-wit: "The plaintiff alleges that he was employed as the sub-agent of defendant Manfred Call to advertise and sell the said machines, and he was not to receive money for his services, but to receive his pay in an interest in the property after it was paid for, and that if he was employed and complied with his part of the agreement and performed his part of the contract, and by the conduct of Manfred Call (and his conduct was in violation of the agreement and in wrong of the plaintiff), then as he held the title and control of the patent and could stop the work under the patent and destroy the business for which E. P. Jones was

employed, then Call, having refused the opportunity to procure his pay by the payment of the debt through the sale of the machines, and pleading the statute of frauds to the second cause of action, the law would permit him to recover .the reasonable value of his services rendered, and whether employed by Call or his father, Moses Call, his agent, or by John L. Jones, his partner, or by Glenn, his partner, the defendant Call is bound by the contract."

5. That the Court, after reciting the allegation contained in the preceding paragraph charged the jury as follows: " Now you are to inquire, has the plaintiff shown you that he was employed under a contract to advertise and sell machines? Has he shown you that he had complied with his part of the contract? Has he shown you that he was deprived of the opportunity of carrying out his contract after October, 1878, by the wrongful conduct of Manfred Call? If he has been so deprived, has he shown you what his services were worth? If he has so satisfied you, he will be entitled to recover whatever his services rendered were reasonably worth, and is entitled to your verdict for said services, also to your finding as to how much has been paid him for said services."

6. That the Judge erred in leaving it ·to the jury that they might find that there was a copartnership by which defendant Call would be bound by any act of J. L. Jones or R. W. Glenn, under the decision of the Supreme Court of North Carolina, the proof in the case showing to the contrary. Whereas, he ought to have charged that there was no evidence of any partnership.

7. That the Judge recited in full to the jury all the allegations and contentions of the plaintiff, but did not recite the allegations and contentions of defendant Call.

*Messrs. Jno. N. Staples* and *Graham & Ruffin*, for the plaintiff.

*Messrs. Scott & Caldwell* and *J. A. Barringer*, for the defendant Call.

12

SMITH, C. J., (after stating the case). I. The first exception, apparent in the record but not urged in the argument, is to the refusal of the Court to submit the three additional issues proposed by defendant to the jury.

These present in a more summary form the inquiries contained in the others, and their rejection can be in no manner prejudicial to the defence. The elements in the controversy with Call are, his employing the plaintiff directly or through an agent, and his having entered into such relations with J. L. Jones as in law confers upon the latter the authority to contract for both.

These are embodied in the issues upon which the jury have passed.

II. It was in evidence that the revocation by Call of the agency exercised by the plaintiff was in writing, and defendant objected to parol evidence of its contents in the absence of the original. Thereupon, the plaintiff, who was on examination for himself, then stated that on receiving it, he was provoked and threw it down on the floor in Cardwell's machine shop in Richmond, and his impression is that he tore it in pieces; that he has never seen it since, and does not know where the paper now is, but that he has not made any search.

The witness was then allowed to speak of the contents, and to this ruling the defendant excepted.

The evidence of the destruction or loss of a paper preliminary to letting in proof of its contents, is addressed to the Court and not to the jury, and the finding when there is any evidence is equally conclusive upon this Court.

"The object of the proof," is the comment of a learned author, "is merely to establish a *reasonable presumption* of the loss of the instrument, and this is a preliminary inquiry addressed to the Judge. If the paper was *supposed to be of little value* or account, a less degree of diligence will be demanded, as it will be aided by the presumption of loss which these circumstances afford." 1 Greenl. Evi., §558.

The examination discloses evidence, we might say cogent evi-

dence, of the destruction of the writing, but if ever so slender, the judgment of the Court that it establishes the fact, is conclusive upon the appeal. *State* v. *Efler*, 85 N. C., 585; *Branton* v. *O'Briant, ante*, 99, with numerous references in the opinion.

Again : the writing was but a notice, and the rule requiring the production of the writing itself as the best proof of what it contains, does not extend to mere notices, which persons are not expected to preserve. 1 Greenl. Evi., §561 ; *State* v. *Credle*, 91 N. C., 640.

The suggestion of the absence of proof of the letter being in the handwriting of the defendant Call, or bearing his signature, cannot be entertained, since manifestly the objection to the receiving the parol proof rests upon a supposed insufficient showing of the loss, and this objection alone is before us. *Bridgers* v. *Bridgers*, 69 N. C., 451; *Kidder* v. *McIlhenny*, 81 N. C., 123; *Williams* v. *Kivett*, 82 N. C., 110; *Gidney* v. *Moore*, 86 N. C., 484.

Besides, the writing seems only to show a revocation of agency, a fact not in dispute, nor the subject of just complaint.

III. The exception to the introduction of two letters written and signed by the defendant Call, addressed to W. E. Tanner & Co., and bearing the same date, October 11th, 1878, has been withdrawn, and will not be considered.

IV. The objection to the admission of a letter from defendant to R. W. Glenn at Richmond on May 3, 1878, is based upon its alleged irrelevancy and tendency to mislead the jury.

This letter represents the interest taken by the writer in the machines, and his desire to extend the sales, and the distinct recognition of the agency in these matters of his father, Moses Call, and so far sheds some light upon the transactions under investigation. But if the statements are irrelevant, we discover nothing in them tending to mislead or prejudice the jury, and where these do not co-exist, the admission of irrelevant evidence does not become an assignable error. *Carrier* v. *Jones*, 68 N. C., 130 ; *Bank* v. *McKeithan*, 84 N. C., 582; *Commissioners* v. *Lash*, 89 N. C., 159 ; *State* v. *Arnold*, 13 Ired., 184 ; *Gaylord* v. *Respass*, 92 N. C., 553.

V. The defendant proposed to read to the jury a portion of the deposition of Moses Call taken in the cause, and detailing a conversation between the witness and the defendant J. L. Jones, which, on objection, was held to be incompetent, and the defendant excepted.

The case prepared and sent up by the appellant is accompanied with several exceptions, which do not seem to have been passed on by the Judge. These must be consequently deemed to have been accepted and the case modified accordingly, as is held in the case of *Owens* v. *Phelps*, 92 N. C., 231.

In those exceptions, it is stated that after the ruling out of the evidence, and upon certain explanations of the purpose of its introduction, "the plaintiff withdrew his objection and the evidence was admitted."

VI. The two instructions asked were given—the first in the form proposed, and the other, to-wit: "If the jury should believe from the evidence that E. P. Jones, the plaintiff, was employed as a sub-agent for the sale of machinery, and was to be paid out of the gross sales, then the plaintiff cannot recover of the defendant Call in this action,"—with the subjoined qualification: "unless the defendant Call violated his agreement and wrongfully prevented him from getting pay for his services," &c., as stated more particularly in the record. There is no error in this addition to the charge, and it would have been improper without it. If the plaintiff, as a sub-agent, was in the active performance of duty, and was to look to the gross sales of the machines for his compensation, the interference of the defendant whereby he was prevented from carrying on his work, and thus providing the means for his compensation, would remit him to his claim upon a *quantum meruit*, or otherwise he would be without remedy.

VII. The objection to the issues as made up by both parties, and the refusal to admit those proposed in substitution, is equally untenable. The first are more in detail, but they present the questions of fact upon the affirmative finding of which, as of-

fered by the plaintiff, his action depends, while those offered by the defendant, embody his matters of defence.

VIII. The point most earnestly pressed was, that while there was no evidence of a direct contract of the defendant with the plaintiff for his employment, nor of any one else with his authority, it was left to the jury to find such contract.

This exception makes it necessary to look into the evidence, and if there was any to be left to the jury, for if there was, they alone were to determine its sufficiency to establish the fact.

The plaintiff testified : "I was employed by Moses Call, father of defendant, whom Manfred Call told me was his agent to attend to his business. Manfred Call told me in Greensboro, and told me his father was his agent; he only came out to see what you gentlemen were doing, but his father was the agent who would attend to the matters."

The witness also testified that "some $11,000 went to pay Call on the debt in about 17 months."

That after the recalling the agency, the defendant received Glenn as an interested associate with them in the continued prosecution of the business of making and selling the machines, under an agreement for the same appropriation of the net proceeds of sale, and the plaintiff then went on selling up to December 2nd, 1878, Glenn saying, "if you are going to quit, I will not have any thing to do with it."

It is true, that the testimony of the defendant directly conflicts with that of the plaintiff, and he explicitly denies that he ever employed the plaintiff or authorized his employment as agent by any one else, while it is not disputed that defendant did notify the plaintiff not to make or sell the machines, thus to some extent exercising the rights of a principal in the matter.

These considerations were properly for the jury, and with them, they were left in the charge.

The next exception is to the instruction which submitted to the jury the question of co-partnership between the defendant and J. L. Jones, and afterwards, upon the admission of Glenn between them and him.

Now the second series of issues were all framed by the defendant's counsel, and do not arise out of the allegations of the complaint, while those of the plaintiff were directed to an inquiry as to the joint employment of the plaintiff by Call and the others, during his alleged association with Jones, as with Glenn when he became interested in the business.

The affirmative finding upon these issues, imposed an equal obligation growing out of contract upon each, and this result is irrespective of the question whether their relations, *inter sese*, were those of partners or not.   They had a common interest in advancing the business—rendering it successful and remunerative—and in securing an agency to this end.   Besides this, according to the plaintiff's testimony, a large sum in receipts from sales passed into the hands of Call, without deduction in payment of plaintiff's services, through which the moneys were earned, and to which Call was not entitled until those services were paid for.

If all the issues relating to the partnership relations of the parties were found for the defendant, it would not affect the findings upon the joint contract, nor impair the right of action and recovery of what is due the agent, which are independent of the supposed firm relations, which become material only, when the employment is the contract of one partner and is to bind the others, in the absence of their direct assent.

This view renders unimportant the instructions asked and those given, upon the questions of partnership, unless they may have influenced the jury in their verdict responsive to the issues submitted for the plaintiff.   What is required to constitute a co-partnership—and what facts make members of it, are matters of law—while the jury find the constituting facts by which the relation is formed.   A participation in the profits and losses of a business in which persons engage is the ordinary test.   We are not prepared to say there was *no evidence* of these underlying conditions, so that error is imputed to the Court in leaving the question under explanation, to be passed on by the jury.   But if

an error, does it enter into and vitiate the finding of the contract?

In a careful review of the case, though not without some hesitancy, we have come to the conclusion that as the inquiry does not arise out of the complaint nor is essential to the cause of action set out, and comes from the defence, even an erroneous ruling upon the point, which cannot be seen to have prejudiced the action of the jury in passing upon the other issues, ought not to be allowed to disturb the result reached as to them.

Without protracting the discussion further, already and necessarily pursued to great length, our opinion is that there is no error that warrants the setting aside of the verdict and awarding a *venire de novo.*   The judgment is therefore affirmed.

No error.                                                    Affirmed.