EDWARD KIDDER v. THOMAS C. McILHENNY and wife.

*Evidence—Practice— Mortgage Securities— Usury—Foreclosure Sales.*

1. Where the jury find that the note in suit was given in settlement of the final balance due on partnership transactions, all inquiry into the articles of copartnership is immaterial.

2. Exceptions to evidence, and the reasons therefor, must be stated in apt time; and it is not admissible to urge one objection at the trial and a totally different one on appeal.

3. A party who fails to tender on the trial such issues as he deems proper, cannot be heard on appeal to complain that the issues submitted do not cover the entire case.

4. A note made in 1868, for a debt then incurred, bearing eight per cent interest, is usurious, unless it be for borrowed money and both the rate and the consideration are set forth therein; but if the note be secured by a mortgage, the mortgagor can only redeem by paying the principal money and legal interest.

5. A note given in renewal of one secured by a mortgage, carries with it the original security.

6. The provisions of C. C. P., § 259, relative to judicial sales are intended to apply to proceedings in the nature of execution sales of property in the hands of others (as legatees, heirs, tenants and trustees) charged with the payment of the judgment, and have no application to foreclosure proceedings, which are left to be governed by the old equity practice.

( *Bridges* v. *Bridges*, 69 N. C., 451; *Hyman* v. *Devereux*, 63 N. C., 624; *Coble* v. *Shoffner*, 75 N. C., 42; *Mebane* v. *Mebane*, 80 N. C., 34, cited and approved.)

CIVIL ACTION tried at Fall Term, 1878, of BRUNSWICK Superior Court, before *Buxton, J.*

This was an action in the nature of a bill to foreclose a mortgage. The plaintiff alleged that defendant executed a note to him for forty-two hundred dollars on the 27th of April, 1868, and secured its payment by a mortgage upon

certain lands. The defendant admitted the execution of said deed, and avers that he did not make the note as alleged, but made a note at that time to the plaintiff, which he is advised and believes was not secured by the mortgage, and that seven years subsequent to the date of the mortgage he executed to plaintiff a promissory note which answers the description set out in the complaint, but not secured as alleged, and which was without consideration and void. The defendant further alleged that the plaintiff and he entered into a written contract, which has been continuously in possession of plaintiff for seven years past, the substance of which, according to his recollection, was for the purpose of cultivating a plantation of defendant for the year 1867, for their mutual benefit, the defendant binding himself to furnish the land, upon which were valuable buildings and machinery suitable for the cultivation and management of the crops agreed to be cultivated, and the plaintiff binding himself to furnish the capital necessary therefor; which agreement was carried out for the year 1867, but owing to the unprecedented rains the crop was destroyed and lost; that after the loss occasioned as aforesaid, the plaintiff proposed that if defendant would execute a promissory note for the sum above mentioned, at eight per cent interest, and secure the same by mortgage, the plaintiff would furnish money to cultivate the farm to recover the loss which had been mutually sustained, to which defendant assented, and the note and mortgage were executed. The defendant further alleged that he received no benefit by this arrangement, because the plaintiff furnished the money for one year only, whereas he should have furnished it for at least two years; that the demand is not for borrowed money, and said note bears usurious interest which cannot be recovered; that his wife is a party in interest and a necessary one to this action; that heretofore, on the 4th of April, 1876, an execution in favor of a creditor issued against this de-

fendant and was levied on the land embraced in said mortgage, the homestead of defendant having been laid off, and the same was sold by the sheriff and bought by W. G. Curtis, to whom a deed was made; and thereafter, to-wit, on the 10th of July, 1876, said Curtis conveyed the land to the *feme* defendant (subsequently made a party) in fee simple.

The plaintiff amended his complaint, and asked judgment against both defendants.

The *feme* defendant then filed an answer, setting up an absolute title in fee by virtue of the deed from said Curtis, and substantially adopting the averments above recited from the defendant's answer, and further alleged that said note and mortgage are void as to her.

Notice was issued to plaintiff to produce the said note and contract in open court, but was returned by the sheriff, that plaintiff was not to be found in his county.

The defendant amended his original answer, to the effect that the copartnership for the year 1867, was continued for the year 1868, plaintiff to furnish the money and defendant the land; that the crop of that year was delivered to plaintiff, and the proceeds thereof applied by plaintiff to the payment of his share of the capital advanced, and no part thereof was paid to defendant, who now claims that he is entitled to an account of the same.

The plaintiff replying alleged that while it was true the note mentioned in the complaint was not executed on the day of the date of the mortgage, yet the plaintiff averred that a note for a like sum, and of the same tenor, except the words "for borrowed money," was made by defendant at the date of the mortgage, under the following circumstances: The words for "borrowed money" being omitted through oversight in the original note, the plaintiff was doubtful of his right to recover more than six per cent. interest, and applied to defendant some years afterwards to make a new note, and the defendant consented and wrote a new note,

and plaintiff surrendered the original; that he has not in his possession the original contract, but has a letter-press copy thereof which he is ready to produce when required, and denied that he agreed to furnish supplies or money for two years; that a settlement was had between them for the year 1867, and after the note upon which this action is brought is paid the plaintiff alleged that he would be the loser in a considerable sum; that the *feme* defendant purchased only the equity of redemption at said sale, with full notice of said mortgage. The plaintiff denied that he received any crops for 1868, or any sum of money or other property from defendant, and averred that he had advanced largely in excess of the amount required by said contract.

And thereupon the following issues offered by the parties and settled by the court were submitted to the jury:

1. Did the parties come to a settlement in 1868, prior to the execution of the first note and mortgage? Ans.—yes.

2. Was the first note given for the balance found to be due the plaintiff on said settlement? Ans.—yes.

3. Was the mortgage executed by defendant to secure said first note? Ans.—yes.

4. Was the note in suit executed in place of and in substitution for said first note? Ans.—yes.

5. Was there a contract partnership, such as is alleged by defendant for the year 1868, between the parties, or was it a contract between them for advances by plaintiff, such as is alleged by him? Ans.—As alleged by plaintiff; we find no new contract.

The issues being found in favor of plaintiff, the court adjudged that he recover the amount at six per cent interest, and on payment of same within three months after entry of judgment, the plaintiff do convey the mortgaged premises to the *feme* defendant; but in default thereof, the defendants to be foreclosed of their equity of redemption. And it was further adjudged that the part of the land

bought by defendant from Eagles and Everett be sold at public auction by a commissioner with privilege to the plaintiff or any other party to this action to become the purchaser, the proceeds to be applied to the satisfaction of the sum herein adjudged to be due plaintiff, the balance if any to be paid to defendant, and the purchaser put in possession, &c. It was also adjudged that the interest be six instead of eight per cent., because the original note secured did not on its face specify that it was for borrowed money.

The case states that defendants moved for a new trial, for that, improper evidence was admitted : On the trial of the issues it became material to plaintiff to show the contents of the written contract of 1867, as aforesaid; and plaintiff testified it was the only one he had ever made with defendant for the said purposes, while the defendant testified that the written contract was abandoned after the first year, and afterwards he operated under a new parol agreement of a different tenor. The plaintiff further testified that he retained a letter press copy of the original contract, leaving original with defendant, and that said copy was a correct one. The notice to the plaintiff to produce the written contract had not been served, and no notice was given to defendant to produce it. Defendant testified he had never had the written contract in his possession, that the signature to said copy was his. Thereupon the plaintiff proposed to read the letter press copy in evidence, which was objected to by defendant on the ground that the original was the best evidence and no notice had been given him to produce it. Objection overruled and copy read. Rule for new trial discharged, judgment for plaintiff, appeal by defendants. :

*Messrs. A. T. & J. London,* for plaintiff:

As to the notice, cited and commented on *How* v. *Hall,* 14 East., 274; 1 Greenl. Ev., § 561. When instrument is lost or destroyed, *McAuley* v. *Earnhart,,* 1 Jones, 502; 5 Blackf.,

(Ind.) 316; 1 Greenl. Ev., § 558; *Haywood* v. *Bryan,* 6 Jones, 82; 8 Ire., 522; 6 Ire., 124. No notice necessary where paper is a duplicate original, *Hubbard* v. *Russell,* 24 Barb., 404. Second note in substitution for first, not in satisfaction thereof, *Gordon* v. *Price,* 10 Ire., 385; 1 Parson on Bills and Notes, 150, and is secured by the mortgage. *Hyman* v. *Devereux,* 63 N. C., 624; 22 Wall., 170; 1 Otto, 114. No issue of fraud raised by answer of *feme* defendant, who purchased with notice, and it does not appear she paid anything. Verdict establishes a valuable consideration—the balance due on a settlement between the parties.

· *Mr. E. G. Haywood,* for defendants.

SMITH, C. J. This case has been elaborately argued, and numerous points eliminated from the record and pressed upon our attention, which in the view we take, need not be considered in its final disposition.

The action is to recover judgment upon a promissory note of the defendant, and to foreclose a mortgage of land given for its security. The *feme* defendant claims the land under an execution sale upon a judgment recovered by a creditor of her husband, the other defendant, and both in their separate answers allege that when the note was executed by the husband he was not indebted to the plaintiff, and hence the deed, being voluntary and without consideration, was void as to his creditors. It does not appear that the debt, for which the sale under execution was made, existed at the date of the mortgage, or before the year 1876, eight years thereafter. The answers further allege that the original note was surrendered and a new one given in its place, ante-dated so as to correspond in terms with the first, except in its recital of a consideration of money loaned; and that thereby the secured debt was discharged, leaving but a naked legal title in the mortgagee which, as an un-

mixed trust, passed to the purchaser under execution by virtue of the act of 1812.  Bat. Rev., ch. 44, § 4.

The defendants also rely upon a written contract of the plaintiff with the defendant McIlhenny, the substance of which both answers undertake to set out, for the cultivation of the defendant's farm for the common benefit of each, and that their entire crop was destroyed by excessive rains, and all their labor and expenditures in its cultivation lost.

The plaintiff replies to this, that upon a full and final settlement of their joint farming operations, McIlhenny fell in debt to him for that and other matters, in the sum for which at that date the original note was given, and that the second note was executed as a renewal and with the express understanding that it was to occupy the place of a secured debt in the mortgage.

From these conflicting allegations there were several issues extracted, and without objection from either party, submitted to the jury, and the jury find them all in favor of the plaintiff.  These findings establish the following facts : The parties did come to a settlement in 1868, and the first note was then executed for the balance ascertained to be due with the mortgage to secure it.  The second note was executed in place of the first, and as a substitute for it, and the plaintiff's statement of the partnership contract for the year 1868 is correct, and the defendant's version of the matter is not true.

The only ruling of the court on the trial of the issues, to which an exception was taken, as appears from the statement of the case, was the admission of the letter-press copy of the partnership contract of 1867, as evidence, on the ground that the original was the best evidence and no notice had been given the defendant to produce it on trial. The plaintiff swore on the trial that when the original contract was entered into, he struck off and kept a letter-press copy of the instrument and left the original with the defendant

and he had never seen it since.. The defendant in his answer, setting out its substance from memory, and duly verified, declares that he does not have the original contract and never had it in possession since its execution.   He had issued a notice to plaintiff to produce the original, but the notice was not served.   To the sufficiency of this exception several answers are naturally suggested.

1. The evidence was not important to the plaintiff's case.. His action was on the substituted note and the admission of its execution devolved on the defendants the *onus* of proving matters of defence against the obligation.   The settlement was the basis of the execution of the note, not the nature of the dealings and transactions of which it was the consummation.   It was indifferent to the plaintiff to enquire into the provisions of the absent instrument, and its existence was not essential to the parol proof that was offered of full and final adjustment, and that the note represents what was admitted to be due.

2. If the defendant did not have the contract as he alleges, why should a notice requiring him to produce what he did not have and could not control, be given?

3. If, as argued, the proof of search was not sufficient to show the loss, why was not that objection then made, instead of the objection that no notice had been given the defendant?   Had it been, we cannot say that abundant proof of the search may not have been furnished.   The defendant was content with the plaintiff's general declaration that he did not have possession, and it was not an error of which he can complain.   The fact is positively and unequivocally sworn to by the plaintiff that he did not then have, nor had ever had the lost instrument in his possession since the press copy was taken, and that it then passed into the defendant's hands.

The general rule is that when an objection might have been removed if made in apt time, and it is afterwards made,

it will not be entertained.   Thus where a copy of a bill annexed to a deposition is proved and it did not appear why the original was not produced, and objection was made to the evidence because it was secondary, at the reading of the deposition on the trial, it was disallowed, because not made when the deposition was given, nor by a preliminary motion to suppress, and the court remarks that "had the objection been taken before trial, either at the examination of the witness or on a motion to suppress, to the proof of the copy, without producing the original or showing its loss, the opposite party would undoubtedly have secured the production of the original, if in existence, or if it be lost or destroyed, been prepared to account for its absence." *York Company* v. *Central R. R.*, 3 Wall., 107.

So here, had the defendant then made his objection to the sufficiency of the preliminary enquiry as to the search, that defect might then perhaps have been supplied by a further and fuller examination, and it is unreasonable for him to acquiesce and to put his objection on a want of notice to himself, and then be permitted to assign for the first time, in this court, a ground for his objection of a nature wholly different.   The defendant expressed then no dissatisfaction as to the proof of loss, and he cannot be heard to do so now. *Bridgers* v. *Bridgers*, 69 N. C., 451.   But what harm can come to the defendant from the admission of the press copy of the contract?   It has no bearing upon a substantial issue. The existence of an original in no way affects the plaintiff's right of action, and its stipulation and terms, inasmuch as they are immerged in the final settlement, do not impair the defence.   It is plain, then, that the admission or rejection of the evidence is wholly immaterial and furnishes no ground of exception.

4. It was insisted for the defendant that the issues do not dispose of the matters in controversy upon the pleadings and that there should have been, and should now be, a

further issue passed on involving the validity of the mortgage as against the *feme* defendant, who by her purchase acquires all the rights of a creditor to impeach.

It is to be noticed that an actual fraudulent intent is not imputed to the defendant McIlhenny in making his mortgage, by the wife, and both attack its validity only by alleging that it was voluntary, resting on no consideration, and hence is void. This allegation is fully met by the finding of the jury that the indebtedness did exist to the full amount of the debt secured, and as this is the only impeaching fact alleged, there is nothing left to the jury to determine affecting the mortgage, and no issues are proper except they involve facts controverted in the pleadings.

Outside of the allegations and denials no enquiries can properly be made. Nor ought the defendants to have been content with the proposed issues if they deserved others. They should then have asked for other issues, and if necessary, they would have been allowed, or if not allowed, the refusal would have constituted matter of exception. It might produce serious inconveniences and delays, if when a party has opportunity to propose further and other issues, he refuses or fails to do so, he would then be heard to complain of the consequences of his own neglect, and thereby increase the costs as well as delay the determination of the cause. We think the point now made for the first time in this court, and even if taken in the court below in apt time, cannot be supported.

The last exception relates to the change of the notes and the effect upon the mortgage security. The notes are for the same sum and for a like time of interest; the substitute does not increase the sum contracted to be paid, and the jury find expressly that it was the intent of the parties to preserve the mortgage security. It is true upon the plea of the defendant the notes, both of them, would bear interest only at six per cent; the last, because it so stated in the note

*borrowed money* was not its *consideration,* and the first, for the same and the additional reason that it is not so expressed upon its face.

The sums contracted to be paid and the sums recoverable, if the defendant chooses to avail himself of the statute, would be in both cases the same, and we know of no way by which the substitute could work a damage to the defendant, or impair the mortgage. The deed was, when made, effectual to secure a debt *bona fide* due; the renewal can work no injury to any one. *Hyman* v. *Devereux,* 63 N. C., 624, decides that a bond given in renewal of one secured in a mortgage, even to an assignee, retains its place in the mortgage as a secured debt. The notes if usurious by reason of the rate of interest expressed, are good as to the principal sum and legal interest, and if effectual as to the residue against the debtor, are equally so against the purchaser and owner of the equity of redemption. For this sum the judgment was entered. *Coble* v. *Shoffner,* 75 N. C., 42. There are, therefore, no errors in the proceedings, except as to the form of the judgment in reference to the sale of the lands, and we need only cite on this point *Mebane* v. *Mebane,* 80 N. C., 34.

Our attention has been called to C. C. P., § 259, as authority for the form of the judgment, which directs an absolute sale and conveyance by the sheriff or referee appointed for the purpose, of real property adjudged to be sold, and this clause is supposed to comprehend a foreclosure sale under mortgage. There have been many cases before the court since the adoption of the code, in which the old rules of equity procedure in regard to judicial sales, including judgments to foreclose, have been recognized as still in force down to the recent case of *Mebane* v. *Mebane, supra,* when the subject was carefully considered; and we should be reluctant to disturb a practice so well settled by giving such wide scope to the words of the statute. The section in which

they are found is a part of the chapter defining executions, and the mode of enforcing them, and directs how lands adjudged to be sold shall be sold, as in other forms of final process. Why the agency of the court is called a referee, and why this mode of judicial sale should be beyond the further control of the court ordering it, find no explanation in the law itself. We can hardly suppose such sweeping effect as is now proposed to be given to the mandate could have been in the contemplation of those who adopted the new system, and we must seek elsewhere for some mode of satisfying its requirements. Accordingly, section 319 authorizes proceedings, after the death of a judgment debtor, against his heirs, devisees or legatees, and also against tenants of real property, owned by him and affected by the judgment; and clause 2, of section 261, provides for the satisfaction of the judgment by execution " against real or personal property in the hands of personal representatives, heirs, devisees, legatees, tenants of real property or trustees." The words thus find a meaning, and the difficulty involved, a solution in their application to lands of others, charged with the payment of the judgment, and which the process, like the writ of *venditioni exponas*, requires specifically to be sold as contradistinguished from that directed against the debtor's property generally and to pay his own debt. Thus restricted, the clause leaves unabridged that important function of a court of equity which directs and controls a sale made by its order and under its authority, through a commissioner of its own appointment, and which is transmitted to the present superior court, its successor. We are not disposed to leave the debtor mortgagor without the protection he has always received when the aid of the court was asked to sell his lands for the payment of the mortgage debt, unless plainly so required by the statute.

The judgment, corrected as we have explained, is affirm-

ed, and the court below will proceed with the case in conformity to this opinion.   Let this be certified.

Per Curiam.                          Modified and affirmed.