PIEDMONT WAGON COMPANY, et al. v. WILLIAM BYRD, et al.

*Writ of Assistance—Practice—Res Judicata—Estoppel.*

1. The judgment or decree of a court of competent jurisdiction is conclusive not only as to the subject-matter actually determined thereby but also as to every other matter which properly belonged to the subject in litigation, and which the parties, by the exercise of reasonable diligence, might have brought forward at the time and had determined respecting it.

2. In an action to foreclose a mortgage against B, one M intervened and by his answer denied the allegations of the complaint, and alleged, as a further defense why decree of sale should not be made, that he was the owner in fee and in possession (through B, his tenant) of the land. At the trial he assented to the issues tendered by the plaintiff, which did not include the one raised as to his title. There was a decree of foreclosure, (from which he failed to prosecute an appeal,) a sale, confirmation and conveyance by the commissioner; *Held*, that the plea of sole seizin by M, not being a counter-claim, was denied by operation of law, and thus an issue as to the title was raised by the pleadings which M should have tendered and supported by proof, and having neglected to do so he is estopped by the judgment in the cause.

3. In such case the purchaser at the sale is entitled to a writ of Assistance to place him in possession of the land.

(FAIRCLOTH, C. J., dissents, *arguendo*, in which FURCHES, J., concurs.)

CIVIL ACTION, pending in WILKES County, heard before *Norwood, J.*, at Spring Term, 1896, of WILKES Superior Court, on a motion for a writ of Assistance by the plaintiff, the Piedmont Wagon Company, which had purchased the land sold under a decree of foreclosure. The motion was refused and plaintiff appealed. The facts appear in the opinion of Associate Justice CLARK.

*Messrs. W. W. Barber* and *T. B. Finley,* for plaintiffs (appellants).

No counsel *contra.*

CLARK, J.: This was an action brought against the mortgagors to foreclose a mortgage. J. O. Martin, who was not one of the mortgagors, on his own application was made a party defendant, and filed his answer denying the complaint and alleged, as a further defense why decree of sale should not be made, " that he is the owner in fee and in lawful possession of the lands described in the complaint,"alleging further that the mortgagors were merely his tenants and without any title to the land, and asking thereupon that the action be dismissed. This plea of sole seizin in himself, not being a counter-claim, was denied by operation of law, (*The Code*, Section 268,) and thus an issue as to said Martin's title was raised on the pleadings. *Bank* v. *Charlotte,* 75 N. C., 45. At the trial he assented to the issues which were tendered by the plaintiff, though the one raised as to his title by his answer was not included, and judgment for sale of the land being rendered upon the verdict he appealed but did not prosecute his appeal.

Martin might possibly have stayed out of the case, but he saw proper to intervene and raised the issue of title and possession in himself, and that the other defendants were merely his tenants in order to defeat a decree that said lands be sold. This new matter of defense was therefore in litigation upon his allegation, and it was incumbent upon him to tender the proper issue, *Maxwell* v. *McIver,* 113 N. C., 288; *Kidder* v. *McIlhenny,* 81 N. C., 123; *McDonald* v. *Carson,* 95 N. C., 377; *Walker* v. *Scott,* 106 N. C., 56, and numerous other cases cited in Clark's Code, (2d Ed.,) page 357, and if he did not he cannot complain of the consequences of his own

neglect.   It was incumbent upon him not only to tender
the issue raised by his allegation of title but to support it
by proof, ( *Wallace* v. *Robeson*, 100 N. C., 206,) and as he
failed to do so judgment properly went against him.

That case was " on all-fours " with this, being an inter-
pleader who set up title to the property, (and also posses-
sion, as in this case,) and failed to introduce evidence to
support his allegations.   The defendant Martin, after com-
ing into the action and raising by his pleadings the issue
of title and possession, should have tendered the issue and
offered evidence ; and " not having spoken when he should
have been heard, should not now be heard when he should
be silent."   He is estopped by the judgment herein, which
decreed the sale of the land as the property of the other
defendants.   To hold otherwise would be to permit him to
trifle with the Court and with the rights of the purchaser,
who should rely upon the decree of sale as at least con-
clusive upon all persons who were parties to the action in
which it was rendered.

The principles governing estoppels by judgment are
established by a long line of decisions in this and other
States, and we have no desire to take a new departure
which will shake the long-settled law as to *res judicata*.
This rule is thus stated in 1 Herman on Estoppel, Sec. 122,
and is fortified by a long list of leading authorities there
cited : " The judgment or decree of a court possessing
competent jurisdiction is final as to the subject matter
thereby determined.   The principle extends further.   It
is not only final as to the matter actually determined but
as to every other matter which the parties might litigate
in the cause, and which they might have had decided.........
This extent of the rule can impose no hardship.   It requires
no more than a reasonable degree of vigilance and atten-
tion ; a different course might be dangerous and often

oppressive. It might tend to unsettle all the determinations of law and open a door for infinite vexation. The rule is founded on sound principle." And the same authority, Section 123, says: " The plea of *res judicata* applies, except in special cases, not only to the points upon which the court was required by the parties to form an opinion and pronounce judgment but to every point which properly belonged to the subject in litigation and which the parties, exercising reasonable diligence, might have brought forward at the time and determined respecting it." It has been urged that by the decision in *Jordan* v. *Farthing*, 117 N. C., 181, this Court intended to abandon this beaten path and strike out a new departure. Such was not our intention. In that case land having been sold under a mortgage, the purchaser brought his action against the mortgagor and made the mortgagee additional party plaintiff. The only question raised by the pleadings was whether it was a valid sale, and the Court observes that it would have been " if the mortgagor had owed only one dollar or any other amount, and that it was out of the question to contend that the accounts of the mortgagor and mortgagee (a long course of dealings outside the mortgage transaction) had been introduced in that action" between the purchaser of the land and the mortgagor. But here we have an entirely different case. In a proceeding to foreclose Martin properly interpleads, (*The Code*, Sec. 267,) claiming that he, and not the mortgagors, is the owner of the land, and that therefore the foreclosure should not be ordered. The title of the interpleader having been thus put in issue, the trial is had, the foreclosure sale is ordered, and the interpleader appeals and afterwards abandons his appeal. It also appears by affidavit in this motion, which is not denied that the interpleader assented to the issues as tendered. Under these circumstances, when the land was sold the

purchaser, seeing that Martin was a party to the proceeding, that he had filed his answer setting up that there should be no sale because the title was in himself, and that after the trial the court had decreed a foreclosure, was entitled to rely upon the principle that the judgment binds all parties to it, certainly to the full scope of the points raised by the pleadings, and was not required to go into the minutiæ of the trial to ascertain whether each and every of the parties proposed proper issues or in open court abandoned or waived his right to insist upon them. The parties to the action are equally entitled to regard the trial and judgment as decisive of the points raised by the pleadings, or which might properly be predicated upon them. *Jones* v. *Beaman*, 117 N. C., 259, so far as the facts of that case are concerned, is distinguishable from the present on the same grounds as *Jordan* v. *Farthing*, *supra*, and so far as it differs from the principles herein stated its expressions were merely *obiter* and are overruled.

The writ of Assistance should therefore issue. *Exum* v. *Baker*, 115 N. C., 242 ; *Coor* v. *Smith*, 107 N. C., 430 ; *Knight* v. *Houghtalling*, 94 N. C., 408.

Reversed.

FAIRCLOTH, C. J., dissenting: I cannot agree with the majority of the Court. On March 6, 1891, the defendant Byrd executed his note to White for $100, and he and wife secured the same by a mortgage on 640 acres of land. In August of the same year White assigned the note and mortgage to Isley & Coffey, and this action on default was brought for judgment and foreclosure. Defendants Byrd and wife, the mortgagors, filed no answer. J. O. Martin intervened and filed an answer, in which he disclaimed any knowledge of the matters alleged between plaintiffs and the mortgagors, but alleged that he was the owner in fee and in the lawful possession of said land, and that he

so notified White before the note and mortgage were exe-
cuted, also that Byrd was his tenant all the time, and has
been for years, and asks that the action be dismissed.

At Spring Term, 1894, the cause coming on for trial,
these issues were submitted " without objection," to-wit :

" 1.  What amount is Byrd indebted to Isley & Coffey on
mortgage executed to White?   Ans.,' '$100.'

" 2.  Did White assign the mortgage to Isley & Coffey for
value ?   Ans'., 'Yes.'"

No other issue was proposed or submitted.   It was
adjudged that plaintiffs recover of Byrd and wife $100 and
an order of sale and foreclosure, and after paying the debt
and costs " the residue to be paid to defendant."   At Fall
Term, 1895, the commissioner reported sale, and that the
Piedmont Wagon Co. was the purchaser at $125.   The
sale was confirmed and commissioner ordered to make deed
to said purchaser.   All of said lands were sold by the
commissioner.   Martin gave notice of appeal but never
prosecuted it.   Early in 1896 said wagon company
through its attorney, reciting the above facts, applied to
*Judge Norwood* by petition for a writ of assistance, plac-
ing the wagon company in possession of the land described
in the complaint and to oust from said land the defendants
Byrd and Martin, and upon the hearing the petition was
disallowed.   The wagon company excepted and appealed.

It does not appear that any writ of possession has been
issued.   The question presented is one of practice, but a
very important one.  The wagon company, the only plaintiff
that need now be considered, is a purchaser at a judicial
sale and was not a party of record during the litigation. It
purchased the interest of Byrd, whatever that may be.   It
is not pretended that it purchased any other interest.   It
could not do so.   Nothing else could have been sold, and
it is evident that neither party nor the court so under-

119—30

stood at the trial.   It is equally clear that neither the parties nor the court understood or intended a sale of Martin's title,. if he had any.   Title to the land was not involved in the trial.   Debt or no debt and the condemnation of Byrd's interest were the only questions considered.

The plaintiff's position is that defendant Martin was in a position to have an issue of title submitted and tried, (which will be adverted to later,) and that failing to do so he is now estopped from asserting any title in this or any other proceeding as against the plaintiff.   To grant such a request would extend the doctrine of estoppel beyond any point reached, even in a *court of law*, in the days of Lord Coke.   Since that time, especially in this country, the doctrine of estoppel has been modified by preserving its benefits without its hardships.   The doctrine now accepted is found in numerous cases: Bigelow on Estoppel ; *Cromwell* v. *County of Sac.*, 94 U. S., 351 ; *Jones* v. *Beaman*, 117 N. C., 259 ; *Temple* v. *Williams*, 91 N. C., 82.

A writ of assistance is not one of right but is discretionary with a court of chancery, to be issued when just and reasonable grounds are made to appear.   The court, when it has decreed a thing to be done, as that A. B. take possession, will issue the writ 'n order to give effect to its decree.   But in putting a purchaser into possession, in pursuance of its decree, it will not interfere with or attempt, in cases of doubt, to settle the right of any party claiming possession by title paramount to that of the mortgagee or other party in whose favor the decree was made.   The writ is discretionary and will only be granted in a clear case. *Thomas* v. *DeBaum*, 1 McCarter, 37.   The issuance of the writ rests in the sound discretion of the Court, and it is only used when the right is clear and where there is no equity or appearance of equity in the defendant, and it

is certainly not customary to issue the writ where there is a *bona fide* contest as to the right to the possession of land, or where rights of the respective parties have not been fully adjudicated in the principal suit.   2 Enc. of Pl. and Practice, 980;  *Van Meter* v. *Borden*, 25 N. J. Eq., 414; *Hooper* v. *Yongs*, 69 Ala., 484.

Where the party in possession claimed to hold the premises before the mortgage, the Court said, "It is enough that the claim of the petitioner is not clear."   *Thomas* v. *BeBaum*, 14 N. J. Eq., 37.   "In doubtful cases the writ should be refused."   *Wiley* v. *Carlisle*, 93 Ala., 238; *Schenck* v. *Conover*, 13 N. J. Eq., 220 ; *Knight* v. *Houghtaling*, 85 N. C., 17.

In consonance with these principles this Court, in the exercise of its discretion, refused the writ and said, " As the controversy as to title is still to be settled, we deem it best for the parties that we should not only declare that it was error to grant the writ as prayed but that we should pass upon the question which may still arise in another action."   *Exum* v. *Baker*, 115 N. C., 242.

The plaintiff further insists that the averment in Martin's answer of title in fee, as above stated, was denied by the statute, and an issue of title was in that way raised, and his failure to submit or tender an issue of title was a waiver, and that he cannot on appeal be heard to complain or to again assert his claim to the land, i. e. that he is estopped in that respect.   If it be assumed for the argument only that such an issue was raised, does the conclusion drawn by him follow ?

This is a question of practice, as we have said, and it may as well be candidly stated that the decisions of this Court on the question have not in all cases been uniform or consistent, and the same may be said of other State courts on mere questions of practice.   The question comes

up in various ways:   In the case of *Kidder* v. *McIlhenny*, 81 N. C., 123, involving the validity of a deed, it was held that if a party failed to tender such issues as he deemed proper he could not on appeal be heard to complain that the issues submitted did not cover the entire case, and others followed to the same effect.   These cases are authority for the plaintiff's contention.   The injustice of this rule soon pressed itself upon the minds of this Court, and in *Bowen* v. *Whitaker*, 92 N. C., 367, it was held that " under Section 395 of *The Code*, if the issues are not prepared by the attorneys, it is the duty of the judge who tries the case to do so."   Speaking for the Court in that case, MERRIMON, J., on   *The Code*-method of procedure, said: " *The Code of Civil Procedure*, as at first adopted in this State, provided for the trial of issues of fact by jury, but it did not specify the particular manner of making them up and submitting them.  *C. C. P.*, Secs. 219 to 240.  This gave rise at once to confusion and much dissatisfaction in the practice of the law.   This Court recognized the evil, and acting upon its authority to prescribe rules of practice for the superior courts, prescribed Rules 3, 4 and 5, adopted at June Term, 1871, and reported in 65 N. C., 705.  These rules directed how and in what time issues of fact should be drawn up.   They were, however, construed to be only directory, unless strictly insisted upon in apt time.   The result was that, in the hurry and carelessness of practice that too much prevailed, they came to be much neglected, and, as a consequence, verdicts became unsatisfactory, and this Court very often found much difficulty in ascertaining from the record what had or had not been settled by the findings of the jury, especially where several issues of fact had been submitted.   To cure this severely felt evil it has been provided by Section 395 of *The Code* that " the issues arising upon the pleadings, material to be tried, *shall* be

WAGON COMPANY v. BYRD.

made up by the attorneys appearing in the action and reduced to writing, or by the judge presiding before or during the trial; and further, by Section 396, that issues shall be framed in concise and direct terms; and prolixity and confusion must be avoided by not having too many issues. It will be observed that the language of these provisions is strong and mandatory; they require that the issues of fact shall be made up and shall be framed, &c. They are mandatory._____It was the duty of the court to see that the trial proceeded according to its (statute) mandatory requirements; having authority, it should have required the counsel to frame the issues and reduce them to writing, or, for any cause, failing to do this, 'the judge presiding should have done so before or during the trial.' It is not sufficient to say that the appellant did not propose proper issues or that he must be taken to have waived them. It does not appear that he did waive them; it certainly does not appear affirmatively that he did so; indeed, it seems that he did not. But it appearing to the court that the pleadings raised issues of fact that have not been tried according to law, the court could not give judgment, certainly while the appellant was present objecting."

Again, in *McDonald* v. *Carson*, 94 N. C., 497, the defendant excepted because his Honor submitted an additional issue raised by the pleadings, and this Court, (SMITH, C. J.,) said, "There is not only no error in this, but it was the duty of the *court* to see that all material controverted matters contained in the pleadings were eliminated and put in the form of issues, as commanded by the statute," citing *Bowen* v. *Whitaker, supra,* as authority.

In *Maxwell* v. *McIver*, 113 N. C., 288, relied upon by the plaintiffs, this Court fell into the same position that his Honor did in *Bowen* v. *Whitaker, supra,* whose mistake was corrected by this Court in that case, as shown above.

The plaintiff relies mainly on *Wallace* v. *Robeson*, 100 N. C., 206, as authority for its proposition, to-wit, the failure of defendant to tender an issue as to title. That was an attachment of personal property. Higgins and Griffith interpleaded and averred that they were the *bona fide* owners of the attached property. His Honor drew and submitted this issue: "Did Higgins and Griffith purchase the property described in the complaint (interplea) for a valuable consideration and without notice?" The interpleaders insisted that upon this issue *the burden of proof* was upon the plaintiffs. His Honor held that the burden was upon the interpleaders. They excepted and declined to introduce any testimony to support the issue. This Court sustained his Honor, saying that the single question presented was, Upon whom did the burden of proof of the issue rest? *The Code*, Sec. 331, provides that in attachments the interpleader must by affidavit allege that he is the owner, also "his title and right to the possession, stating the *grounds* of such right and title." The Court held that under that statute, requiring such *particularity* in the plea, the burden of proof was on the interpleaders, who lost their case solely because they failed to introduce their evidence. There is no statute requiring such full particularity by an interpleader in a case like the present. He pleads like others when title to land is in issue.

The resemblance of the last-cited case to the present is not easily perceived. There, an issue was submitted as to title; here, no issue was submitted by any one. There, the case turned alone upon the question of the burden of proof; here, no such question is presented. Apart from the foregoing, is there any correct principle upon which to grant the plaintiff's petition? Is it just or reasonable to do so? Should he, by this extraordinary process, take 640 acres of land for $125, and cut off Martin forever from the land he

claims, without a trial of his title? Would it not be better to refuse the writ, as was done in *Exum* v. *Baker*, *supra*, and let the parties have their titles passed upon in the usual way? If an issue had been submitted as to the interpleader's title, the plaintiffs Isley & Coffey would certainly have had the same judgment that was rendered at the trial, and the purchaser would have acquired all the interest conveyed in the mortgage under which he claims, and is there any equitable reason for giving him any more? I think the judgment should be affirmed.

FURCHES, J.: I concur in the dissenting opinion.