O. J. LUDWICK AND J. R. BAME v. GEORGE T. PENNY AND C. C. BENNETT.

(Filed 23 December, 1911.)

1. Claim and Delivery—Defendant's Measure of Damages—Pleadings—Interpretation of Statutes.

Where, under claim and delivery proceedings, the plaintiff comes into the possession of the property, the subject of the proceedings, and the judgment is given for the defendant, Revisal, sec. 570, limits the defendant's recovery to the return of the property, or the value thereof, in case a return cannot be had, and damages for the same; and defendant's counterclaim asking for no more is superfluous pleading.

LUDWICK *v.* PENNY.

**2. Same—Malicious Prosecution—Judgment—Res Adjudicata.**

When a recovery is had only for the damages allowed to the defendant in claim and delivery proceedings for the wrongful seizure of his property used in his business, as allowed by Revisal, sec. 570, and in that action no further damage has been set up by way of counterclaim than those given by the statute, the doctrine of *res adjudicata* does not apply in an independent action brought by the defendant in the former action to recover of the plaintiff therein damages for breaking up and destroying his business by unlawfully and maliciously prosecuting the action of claim and delivery.

**3. Same—Counterclaim.**

When the defendant in claim and delivery proceedings has recovered judgment against the plaintiff for the damages allowed for the wrongful seizure allowed by Revisal, sec. 570, and has set up therein a counterclaim for only the damages allowed by the statute, the damages for "unlawfully, willfully, wrongfully, wantonly, recklessly, and maliciously" suing out the process are not included in the determination of the action, and *res adjudicata* cannot be pleaded in an independent action subsequently brought by the defendant for their recovery.

**4. Same.**

The fundamental reasons for the application of the doctrine of *res adjudicata* are that there should be an end of litigation and that no one should be vexed twice for the same cause; therefore, when the defendant in claim and delivery proceedings has recovered of the plaintiff therein such damages for his wrongful seizure of defendant's property as allowed by Revisal, sec. 570, and he has claimed no more, he may, by an independent action, sue for such damages to his business as may have been caused by the malicious prosecution of the plaintiff's action; for such was not the subject of recovery in the claim and delivery proceedings, and the doctrine of *res adjudicata* has no application.

**5. Same—Practice.**

A suit for maliciously prosecuting a proceeding in claim and delivery for the purpose of breaking up the business of another will not lie before the termination of the claim and delivery proceedings, and the defendant in such proceedings cannot therefore set up a counterclaim in that action for the damages he may have sustained in his business.

**5. Claim and Delivery—Malicious Prosecution—Pleading—"Probable Cause."**

An allegation in a complaint that the defendant maliciously, recklessly, and wantonly destroyed the plaintiff's business by

seizing his property in a claim and delivery proceeding, is a sufficient allegation of a want of probable cause.

### 7. Same—Interpretation of Pleadings.

Pleadings will be liberally construed, and when there is an allegation in a complaint for damages for a malicious abuse of process, and it appears that it was based solely upon the facts that the plaintiff was unable to replevy the property seized under claim and delivery proceedings by the defendant, and that in consequence his business was destroyed, the allegations show that the action is really one to recover for the malicious prosecution of a civil action and an interference with the plaintiff's property by claim and delivery proceedings.

### 8. Same.

When in an action for damages to plaintiff's business by reason of the defendant's seizing his property in claim and delivery proceedings, it is alleged that the plaintiff was not indebted at all to the defendant, and that defendant seized the property which plaintiff was unable to replevy, and that the defendant "unlawfully, wrongfully, wantonly, and recklessly commenced said action and prosecuted the same to his damage," the words employed are stronger than if a distinct allegation had been made that the claim and delivery were taken out "without probable cause," and, there being no set form for allegations of this character, the use of this expression is not required. Distinction between malicious prosecution and malicious abuse of process stated by Walker, J.

### 9. Appeal and Error—Objections and Exceptions—Assignments of Error.

When a party states his ground of objection to the admissibility of evidence upon the trial, his exception on appeal to the Supreme Court will be confined to the ground upon which he has based it.

Brown, J., dissenting.

Appeal by defendants from *Daniels, J.,* at June Term, 1911, of Guilford.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*Justice & Broadhurst for plaintiff.*
*J. T. Gold and King & Kimball for defendant.*

Walker, J. Plaintiffs brought this action to recover damages for unlawfully and maliciously suing out process and levying

upon plaintiffs' property, thereby breaking up and destroying their business. Defendant had previously sued the plaintiffs for the recovery of the property, and under claim and delivery proceedings had seized the same. That suit was decided in favor of the defendants, for the reason hereinafter stated. The defendant held a note, and a mortgage on the property to secure the same, which was executed by one Thomas to Penny. The property was afterwards sold by Thomas to the plaintiffs, Ludwick and Bame, who undertook to pay the note secured by the mortgage. They alleged that, by an agreement between all interested parties and the payment of $1,500, the debt and mortgage had been satisfied when Penny brought his suit against them. The jury so found in that action, and further found, in answer to issues submitted to them, that the value of the property, sold and unsold by Penny, was $2,500. The court thereupon adjudged that the defendants in that suit, Ludwick and Bame, recover of the plaintiff, George T. Penny, the sum of $750, the value of the property which had been sold, and the costs of the action, and also the sum of $1,800, the value of the unsold property, as found by the jury; but as to the latter sum ($1,800) a stay bond of execution was ordered, so that the plaintiff, Penny, might have the opportunity to redeliver the unsold property. The defendants in that action, Ludwick and Bame, set up a counterclaim for the unlawful and wrongful conversion of their property by Penny, and for nothing more.

The defendant in this action, George T. Penny, pleads that the plaintiffs are estopped by the judgment in the action of Penny v. Ludwick and Bame to claim any damages for "breaking up and destroying their business by unlawfully and maliciously suing out process of claim and delivery and seizing their property, as that question was directly involved in the former suit." We do not adopt this view of the matter. The jury found, in this case, that "the defendant, George T. Penny, had unlawfully, willfully, wrongfully, wantonly, recklessly, and maliciously sued out the process of the court in the case of Penny v. Ludwick and Bame, as alleged in the complaint," which was equivalent to saying that Penny, knowing that he had no cause of action against the defendants in that suit, Lud-

wick and Bame, had wrongfully, maliciously, and wantonly brought the suit and levied upon their property which was used in their business, which, it is alleged, subsequently destroyed it. This matter was not involved in the former suit.

The Revisal, sec. 570, provides that in an action to recover the possession of personal property, if the property has been delivered to the plaintiff, and the defendant claims a return thereof, and becomes entitled to it by succeeding in the action, judgment for him shall be for a return of the property, or for the value thereof, in case a return cannot be had, and damages for taking and withholding the same. It is true, the defendants in that case set up a counterclaim, but they did not allege any facts which would entitle them to any greater relief than is given to them by Revisal, sec. 570, and the counterclaim was superfluous pleading.

The cause of action alleged in this case was not, therefore, involved in that suit, nor was it at all considered, nor did the defendants therein recover any damages on that account. One valid reason for not estopping the plaintiffs in this action by the judgment in the former suit is that the statute we have cited limits the recovery in the latter to the property or the value thereof, unless, perhaps, the defendants in that suit had set up a counterclaim for more, that is, not only for such damages, but for maliciously breaking up and destroying their business.

The defendant Penny relies upon the following principles, which he says are established by *Porter v. Mack,* 50 W. Va., 581, 592, and numerous other authorities cited in the brief of his counsel: "When a person has a cause of action which he may assert by an action *ex contractu* for the direct damages, or *ex delicto* for both the direct and indirect damages, if he selects the former he waives the latter, including all claim for indirect damages. Both actions are regarded as for the same wrong, of which he can have but a single satisfaction, though it in no wise compensates him for the damages sustained." 21 Am. and Eng. Enc., p. 237, note 1; Webb's Pollock on Torts, 658; *Kendall v. Stokes,* 3 How., 87; *Norton v. Dougherty,* 3 Gray, 372; *Ware v. Percival,* 61 Me., 391; *Newby v. Caldwell,* 54 Iowa, 102; *Wagner v. Wagner,* 36 Minn., 239; *Thompson v. Myrick,* 24

Minn., 12; *Whitney's Admr. v. Town of Clarendon,* 18 Vt., 258; *Smith v. Way,* 9 Allen, 473. And again: "In all cases where the plaintiff has his option in the outset to bring tort or contract to recover damages for one and the same injury upon a state of facts which will support either, an adjudication in one, whichever he may elect, is, upon principle, a bar to the other." And further it is urged by him that "a cause of action and the damages recoverable therefor are an entirety. The party injured must be plaintiff, and must demand all the damages he has suffered or which he will suffer from the injury, grievance, or cause of action of which he complains. He cannot split a cause of action and bring successive suits for parts, because he may not at first be able to prove all the items of the demand, or because all the damages have not been suffered. If he attempts to do so, a recovery in the first suit, though for less than his whole demand, will be a bar to a second action."

The principle here asserted in defendant's behalf, as defeating the plaintiffs' right of recovery in this action, finds support in the decisions of this Court. *Eller v. R. R.,* 140 N. C., 140; *Mast v. Sapp,* 140 N. C., 538.

The defendant also contends that the Court has adopted in such cases as this the following rule: "Where two or more successive actions are identical as to the parties, the alleged cause of action, the defenses relied upon, and the relief demanded, a judgment upon the merits in the first action will estop any and all parties from maintaining the subsequent ones. Except in special cases, the plea of *res adjudicata* applies not only to points upon which the court was actually required to pronounce judgment, but to every point which properly belonged to the subject of the issue, and which the parties, exercising reasonable diligence, might have brought forward. Under our present system of pleading and practice a party is conclusively presumed, when sued in a second action on matters before litigated, to have set up in the former action all the equitable defenses of which he might have availed himself to defeat the legal title." *Tuttle v. Harrill,* 85 N. C., 456; *Anderson v. Rainey,* 100 N. C., 321; *Buchanan v. Harrington,* 152 N. C., 335; *Harper v. Lenoir,* 152 N. C., 723; *Wagon Co. v. Bird,* 119 N. C., 460.

We have no desire to contravene what is thus stated by the authorities, for we believe that when they are properly considered and understood, it will be found that the principle is correctly formulated by them and is in itself just and right. There should be an end of litigation, and this is the fundamental idea upon which the rule of *res judicata* is founded, and to this may be added, as another reason for the rule, the maxim of the law that no one should be twice vexed for the same cause. But does this well-settled rule apply to this case? We think not, and the case of *Tyler v. Capehart*, 125 N. C., 64, which explains and defines the doctrine on this question, is decisively against the defendant's contention. It is said in that case that "A judgment is decisive of the points raised by the pleadings, or which might be properly predicated upon them, but does not embrace any matters which might have been brought into the litigation, or causes of action which the plaintiff might have joined, but which in fact are neither joined nor embraced by the pleadings. Although the present cause of action might have been set up as a second cause of action in the former suit, as it was not, and was not actually litigated, and was not 'such matter as was necessarily involved therein,' the plea of *res judicata* will not avail."

We have seen that our statute confines the recovery in an action for personal property with the ancillary remedy of claim and delivery to the property itself or the value thereof, which, of course, excludes the recovery of any damages for maliciously suing out process and destroying the plaintiff's business, which is a distinct cause of action with a different rule as to the measure of damages. In his treatise on Torts (1 vol., 3 Ed., p. 348), Judge Cooley tells us when an action will lie for the malicious prosecution of a civil suit, and in that connection he says: "So a suit for malicious prosecution will lie where the plaintiff's property or business has been interfered with by the appointment of a receiver, the granting of an injunction, or by writ of replevin." *Brownstein v. Sahlein,* 65 Hun., 365; *McPherson v. Runyon,* 41 Minn., 524. He also says that the same rules apply to actions for malicious civil suits as for criminal prosecutions, and thus states this branch of the rule: "It is

laid down or assumed in all the cases that an action for the malicious prosecution of a civil suit is governed by the same principles as one for the malicious prosecution of a criminal action. There must be malice and the want of probable cause, and the same rules apply in the proof or disproof of these elements. So the advice of counsel will have the same effect as in case of criminal prosecution, under the same conditions. And the malicious suit must be terminated in favor of the plaintiff in that action." *Ibid.,* p. 352.

Speaking of the malicious abuse of process, he distinguishes it from a malicious civil suit, where there is an interference with property or business, as follows: "If process, either civil or criminal, is willfully made use of for a purpose not justified by the law, this is abuse for which an action will lie. The following are illustrations: Entering a judgment and suing out an attachment for an amount greatly in excess of the debt; causing an arrest for more than is due; levying an execution for an excessive amount; causing an arrest when the party cannot procure bail and keeping him imprisoned until, by stress thereof, he is compelled to surrender property to which the other is not entitled. In these cases, proof of actual malice is not important, except as it may tend to aggravate damages; it is enough that the process was willfully abused to accomplish some unlawful purpose. 'Two elements are necessary to an action for the malicious abuse of legal process: First, the existence of an ulterior purpose; and, second, an act in the use of the process not proper in the regular prosecution of the proceeding. Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process.' In a suit for malicious abuse of process it is not necessary that there should have been a termination of the suit in which the process was issued, nor a want of probable cause for the suit." *Ibid.,* p. 354 *et seq.* The distinction is clear: one consists in commencing and prosecuting a suit maliciously and interfering with property or business, and the other consists in the willful, unlawful, and wrongful use of the process itself. As the suit must have been terminated before an action will lie for prosecuting it maliciously, this cause could not be set up in the action itself as a counterclaim

or otherwise. *Fulton Grocery Co. v. Maddox,* 111 Geo., 260; *Bonney v. King,* 103 Ill. App., 601; *Luby v. Bennett,* 111 Wis., 613.

But the conclusive answer to the contention that the former judgment is *res judicata* is that the defendant asked for no more than the statute allowed him to recover in that action, that is, the damages for the conversion only, and nothing more. This being the measure of his recovery, as fixed by the statute, he was not at liberty to ask for more damages than those authorized by the positive law in such cases, and therefore, having no opportunity to recover them in that action, he is not estopped to ask for them in this one.

The very question involved in this case is decided against the defendant's contention in *McPherson v. Runyon,* 41 Minn., 524 (16 Am. St., 727). It is suggested that the complaint shows that the plaintiffs are suing for a malicious abuse of process only, but a cursory reading of the complaint will make it appear, we think, that the action is really one for the malicious prosecution of a civil action and an interference with their property by claim and delivery proceedings. It is true, plaintiffs allege that there was a malicious abuse of the process issued by the court, but they base this allegation solely upon the fact that they were unable to replevy the property by giving bond, which is manifestly insufficient to sustain such an action. They do allege, though, in substance, facts which are sufficient to constitute a good cause for malicious prosecution, for they say that defendant, knowing the plaintiffs were not indebted to him, *at all,* upon the debt and mortgage, unlawfully, wrongfully, willfully, wantonly, and recklessly commenced said action and prosecuted the same to their damage. They do not use the words "without probable cause," but no set form of words is required, if those of equivalent import are used, and the language of this complaint, in that respect, is much stronger than if the plaintiffs had employed the words "and without probable cause." If what the plaintiff alleges is true, there was no probable cause, but the action was wantonly instituted, and with reckless indifference to plaintiffs' rights of property. Pleadings are now construed liberally, and plaintiff recovers according to his allegations.

*Cheese Co. v. Pipkin,* 155 N. C., 394; *Vorhees v. Porter,* 134 N. C., 591; *Blackmore v. Winders,* 144 N. C., 212. But after all is said, the fact remains that the defendant in the former action alleged no more than would enable him to recover what the statute allowed him to recover as damages, and that corresponded exactly with the allegation. The case is governed by *Bowen v. King,* 146 N. C., 385, where it is said: "While the allegation of the complaint may be broad enough to constitute a demand for the possession, it is evident, from a perusal of the entire pleadings, that the demand was not intended to be for the possession, which the plaintiff undoubtedly had when the action was commenced, but was to recover damages caused by reason of the wrongful seizure and detention of the property. As heretofore stated, it does not definitely appear how plaintiff reacquired possession of the property; but assuming—and there are statements from some of the witnesses tending to show this—that the possession was restored by means of a former action of claim and delivery, while plaintiff could have had his damages assessed in the former action (Revisal, sec. 570), the authorities seem to be to the effect that he was not required to take this course, but, after obtaining possession, could, in another action, recover damages for the injury done by the wrongful seizure and detention of his property. *Woody v. Jordan,* 69 N. C., 189; *Asher v. Reigenstein,* 105 N. C., 213."

Our conclusion is. that the plaintiffs are not estopped by the former judgment.

The testimony of the plaintiff, O. J. Ludwick, was objected to upon the ground that the former judgment was *res judicata,* and the assignment of error based upon this exception cannot be broader than the exception itself. Where a party states the ground of his objection to evidence below, he cannot rely upon a different ground in this Court. This is well settled. *Kidder v. McIlhenny,* 81 N. C., 123; *Jones v. Call,* 93 N. C., 179.

We do not mean to imply that there was any error in the court's ruling upon the evidence, or in its charge to the jury upon the damages. Those questions are not presented to us by the exceptions and assignments of error.

The court properly refused to sign the judgment tendered by the defendant, upon a verdict in favor of the plaintiff.

No error.

Brown, J., dissenting: The facts, as I understand them, are that Penny brought an action against Ludwick to recover possession of certain personal property, consisting of a soda fountain, cash register, cigar case, stove, electric meter, refrigerator, electric fan and a motor fan, used in a restaurant in High Point, and took out the ancillary remedy of claim and delivery. Ludwick failed to replevy and the property was delivered to Penny.

At the trial Penny failed to establish his right to recover the property, and judgment was given for Ludwick. The case is reported 152 N. C., 376. In that action, as appears in this record, Ludwick not only denied Penny's title to the property and right to recover, but set up (something he was not compelled to do) a counterclaim, in which he averred that Penny had unlawfully and wrongfully seized the property and converted it to his own use, to his great damage. Ludwick asked as relief that the property be restored and that he recover as damages $4,000. Ludwick recovered judgment for $700 on third issue and $1,800 on fourth issue. 152 N. C., 377.

Ludwick now brings this suit, alleging that Penny had maliciously sued out the claim and delivery and had destroyed his business by the wrongful seizure of his property. I am of opinion that the plaintiff Ludwick, having seen fit to plead a counterclaim in the other action and to claim damages for the wrong done him, should have set up all his items and claims for damage in that counterclaim and have them all determined on one trial. He should not be permitted to divide up his damages, as they all grew out of one and the same transaction and one and the same tort.

For a long time I thought such a counterclaim could not be pleaded in an action in nature of claim and delivery, and that the defendant must wait until that action was ended in his favor and then sue for damages. But that question was settled by this Court in *Smith v. French,* 141 N. C., 1, wherein it is

held that the defendant may plead his counterclaim for damages for the tort in the claim and delivery action. In that case *Mr. Justice Hoke* says: "Even if the present opinion should be found to conflict with some former decision, it is only a question of procedure, not involving a rule of property, and we think it better that our present construction of the statute should now be declared the true one as more in accord with the spirit and letter of our Code, which, as heretofore stated, designs and contemplates that all matters growing out of or connected with the same controversy should be adjusted in one and the same action.

"A counterclaim connected with plaintiff's cause of action or with the subject of the same will nearly always take its rise before action brought, but we hold that neither the statute nor the reason of the thing require that such counterclaim should necessarily or entirely mature before action commenced nor even before answer filed, if the provisions of The Code permit, and right and justice require that an amendment be allowed which will enable parties to end the same controversy in one and the same litigation."

Thus we see that this plaintiff had the right to plead a counterclaim for damages for the wrongful seizure of his property in the other action, and also that he did plead it. Having chosen to plead it, he should have set up all his items of damage in that counterclaim and should not be heard again concerning same transaction.

It is immaterial that plaintiff now avers that the taking of his property by legal process was maliciously done. It was all connected with and grew out of the one act, and could and should have been embraced in his counterclaim in the former suit.

It is a well-settled principle that the commission of a single tortious act creates a single cause of action only, and all damages resulting therefrom must be recovered in one suit. 24 Am. and Eng. Ency., p. 788.

The counterclaim set up by plaintiff in the former action is to be treated as if he had chosen to commence an independent action for damages. He should have set up all his damages in the one action and have them determined on the one trial. This is the true spirit and value of Code pleading.

In the case of *Porter v. Mack,* 50 W. Va., 581, 592, it is said: "The law seems to be well settled that when a person has a cause of action which he may assert by an action *ex contractu* for the direct damages, or *ex delicto* for both the direct and indirect damages, if he selects the former he waives the latter, including all claim for indirect damages. Both actions are regarded as for the same wrong, of which he can have but a single satisfaction, though it in no wise compensates him for the damages sustained."

In that case a recovery was sought to be had for an alleged conspiracy to break up the business of the plaintiff, and this was a second action and the plaintiff was held bound by the adjudication of the previous action.

In his counterclaim this plaintiff averred that the taking of the property was wrongful. He could just as easily have averred that it was malicious. He could have claimed damages to his business as the result of the taking as well as the injury and sacrifice of his property.

In 21 Am. and Eng. Ency. (1 Ed.), p. 237, it is said: "In all cases where the plaintiff has his option in the outset to bring tort or contract to recover damages for one and the same injury upon a state of facts which will support either, an adjudication in one, whichever he may elect, is, upon principle, a bar to the other." See, also, *Norton v. Dougherty,* 63 Am. Dec., 758 (Mass.); *Ware v. Percival,* 61 Me., 391; *Newby v. Caldwell,* 54 Ia,, 102; *Wagner v. Wagner,* 36 Minn., 239.

In *Norton v. Dougherty, supra, Chief Justice Shaw* says: "On consideration, the Court are of the opinion that the former judgment was a good bar, because the first action was brought to recover damages for the same wrong or injury and because it could be supported by the same evidence."

Mr. Sutherland says:

*"Causes of Action Not Divisible.*—A cause of action and the damages recoverable therefor are an entirety. The party injured must be plaintiff, and must demand all the damages he has suffered or which he will suffer from the injury, grievance, or cause of action of which he complains. He cannot split a cause of action and bring successive suits for parts; he may not

be able at first to prove all the items of the demand, or because all the demands have not been suffered. If he attempt to do so, a recovery in the first suit, though for less than his whole demand, will be a bar to a second action." In support of this statement the author cites a large number of cases, amongst others, *Porter v. Mack, supra.*

These well-settled principles are clearly stated in the well-considered opinion of *Mr. Justice Clark* in *Wagon Co. v. Bird,* 119 N. C., 460, in which it is held that, "The judgment or decree of a court of competent jurisdiction is conclusive not only as to the subject-matter actually determined thereby, but also as to every other matter which properly belonged to the subject in litigation, and which the parties by the exercise of reasonable diligence might have brought forward at the time and had determined respecting it."

The only evidence of damage which plaintiff offers on this trial is injury to his business by reason of the wrongful taking of his restaurant fixtures.

He could and should have alleged and proven the same item of damage on the trial of his counterclaim.

This is not an action for malicious prosecution, which could not be commenced until after the termination of the former action. The complaint does not allege a want of probable cause, or any other of the usual and necessary allegations in a suit for malicious prosecution. On the contrary, in section 4 of the complaint this action is characterized as one for "abuse of process."

Such an action need not await the termination of the former proceeding. "An action for damages for the abuse of legal process may be maintained before the action in which such process was issued is terminated." 19 Cyc., 632.

It seems to me plain that every element of damage set up in this action could and should have been set up in the counterclaim in the former under the principles laid down in *Smith v. French, supra.*

I am of opinion that the former judgment for damages rendered in plaintiff's favor on his counterclaim is a bar to the recovery of further damages for the same wrong.