Ruffin, C. J.
 

 One of the points stated is, whether the slaves, which were conveyed to the respective grand* children, and had been in the possession of their mothers, are to be brought into hotchpot as advancements, either to the grand children or the mothers. They are not.— The grand-children are not entitled to a distributive share in their own rights, but as representing the respective mothers. They are therefore bound to bring in the gifts to their parents, but not those to themselves. There was no effectual gift of these slaves to the mothers, according to the Act of 1806 ; but they were conveyed directly to the several grand children. The statute of distributions is restricted to gifts from a parent to a child, and does1 not include donations to grand children.
 

 Other points are, as to the share of the widow; and what is the effect of the advancements to John, as between him and his sisters, and those representing them,
 
 *162
 
 and as between them and the widow. It is settled, that under the words, “child’s part,” in the act of 1784, advancements to children are to be brought in for the benefit of the widow as well as that of other children.
 
 Davis v. Duke
 
 Conf, Rep. 361. Consequently, she is entitled here to the benefit of those made to the children themselves, consistingofpersonalty. The effect of the advancement in realty to the son depends on the act of 1S44. C. 51. This may be considered, first, as between him and the other children. The Court is oí opinion, that he is excluded from' participating with them in the personalty, inasmuch as the gifts of the two kinds of estate to him exceed in value one ninth part of the whole estate — that is, a share thereof reckoned according to the number of children. It is true, the act does not provide for the case of advancement, to the same child cfboth kinds of property; for it was not necessary to do so in order to give effect to the purpose of the Legislature; which was to establish a perfect equality in the division of an intestate’s whole estate, real and personal, amongst his children, excepting only, that no property given by a parent to a child is in any case to be taken away. In order to carry out that purpose, the first section enacts, that an excessive advancement of personalty' shall be charged to the share of the real estate of the child advanced. It is plain, that it ought to be thus charged, whether the share of the real estate, to which the child may be entitled, be a full share, or one diminished by reason of a partial advancement in land. The next section makes a similar provision, when the excessive advancement is in real estate. Whatever the proportion of such share may be, which belongs
 
 to the
 
 child in one kind of property, an excessive provision in the other kind is, in respect of the excess, to be a deduction from it. And it was not necessary to make an express provision for the case of an advancement in each kind, because the Statute of Descents and that ef Distri»
 
 *163
 
 butions, (which the act of 1S44 amends,) had already provided for the case of a partial advancement of either kind, and the act of 1844 does not alter them, as far as it is consistent with them. In this case the excessive-advancement was in land, as it must be understood, since it is stated, that the two negroes given to the son were not equal in value to a share of the personalty, but that they and the land, together, were of a greater value than a ' child’s share of both the real and personal estates. The case of an excessive advancement in land falls under the second section of the act. That provides, that “when any person shall die intestate, seised and possessed of any real estate, who had settled any real estate on a child of more value than is equal to the share which shall descend to the other children,” such child shall, in the distribution of the personal estate, be charged with the excess in value of the settled lands. It does not appear that the intestate owned any land at the time of his death, and it cannot be assumed that he did. Whence it may be argued, that the case is not within the act, which speaks of an intestate, who dies “seised and possessed of real estate.” But that cannot be the true sense ofthis section, though it be literally thus expressed. The second section was intended to be merely correlative to the first: the one, providing for an excess of advancement in personalty, and the other, -in realty. There is no expression in the first section to tie it up to the case in which the intestate died possessed or entitled to personalty ; but the language is “that when any person shall die intestate, who had in his or her life time advanced to any child personal property of value more than equal to a distributive share of the personal estate, such child shall, in the division of the real estate, if there be any, be charged with the excess in value.”— These words include any and every person advancing a child in personalty ; and the only terms of restriction are, “if there be any,” and they apply, not to the personal es •
 
 *164
 
 tate, out of which the advancement was made, but to the real estate, from which the child, thus excessively advanced, is excluded. It is clear, then, that, if the parent give to one child his whole personal property and leave nothing but land at his death, that child is, under the first section, excluded from the real estate, either in whole or part, according to the value of the advancement and of Jhereal estate. Now, the second section, respecting excessive advancements in real estate, is expressed in terms precisely equivalent,
 
 reddendo singula singulis,
 
 with the exception of the words, ‘ seised and possessed of any real estate,” being applied to the intestate at his death. It seems to be palpably certain, that they were introduced inadvertently, and cannot control the construction of that part of the act. It would destroy the harmony of the two clauses, and be absurd in itself. It would be singular indeed, that a child, advanced in land above the value of a share of both kinds of estates, should not be admitted to a share of the personalty, if the parent left lands for the other children ; but that, if the parent left no lands, as a provision for his other children, then the advanced child should come in for an equal share of the personalty with the others; 'in other words, that the more destitute the other children were left, the greater share the advanced child should have. It seems impossible to impute such a purpose to the legislature; or that it could have been meant, that an excess of advancement in one kind of estate should be charged to the child’s share in the other kind, when, under the very same circumstances, an excess of advancement in the latter would not be chargeable to the share in the former. The result is, that, notwithstanding those words, “seised and possessed of any real estate,” the intention of the provision was not, that an excess in land shall be charged to the child in the distribution of the personal estate, provided the parent left other real estate as well as
 
 *165
 
 personalty; but it was, that such excess shall be thus charged at all events whenever there is personal estate to be distributed. Consequently', the son is not entitled to any more of the personal estate.
 

 The Court, however,is of opinion, that the son’s exclusion, so far as it arises from the advancement in laud, is as between him and other children, or their representatives, only ; and that the land is not to be brought in for the benefit of the widow. The act is in terms confined to children'and their representatives ; it being meant to es-blish an equality between them, and nothing more. In the next place, the provision for the widow out of the husband’s real estate is secured in a different form ; that is, as dower in one third of that left by him or conveyed with intent to defeat her right of dower. Having made that competent provision for her in the land, the law, next, gives her a child’s part of the personal estate, as a distinct fund. The act of 184 4 does not purport to give her more than a child’s part in any case ; and the law would be untrue toils policy, if it were to enlarge the widow’s share oí the personalty'-, by estimating with it an advancement in land to a child and giving her in personalty a share of the aggregate in absolute property, asa-gainst all the children. There could have been no such intention; and the willow’s share of the personalty is to be ascertained, just as it would be, if the act oí IS 14 had not been passed. Consequently, if a child be advanced in personalty to the value of a full share thereof, the advancement and that child are both to be thrown out, and the personalty on hand divided between the widow and the other children. But, as the advancement in personalty7 to the son, in this case, was of less than his share, or tenth part, of the personal estate, it is morally certain, that, but for the act of 1844, he would have brought it in, and have had his full share made up to him. As respects the wi ow, it must be brought in, for the purpose
 
 *166
 
 of giving her a child’s part, or one tenth, of
 
 the
 
 whole personalty, including that advancement, and such others in personalty as are not full advancements of that kind of property. That is necessarily so, in order to keep the widow to her child’s part; for, unless the partial advancement to the son in slaves be brought in, the widow would have a ninth part of the personalty, which was left by the husband or advanced to the other children, while there are in fact nine children, and the one excluded did not receive an aliquot part of the personalty, reckoning by the whole number of children and the wid. ow; whereas,'at most, she cannot have more than a child’s part or one tenth of the whole personal estate, including advancements in it. The widow’s share is, therefore, to be first ascertained, upon the basis of a division of the personalty by itself (including partial advancements) between her and all the children, under the act of 1784 ; and after taking out her share, the remaining- fund is divisible among the other eight children, or such of them as were not fully advanced, and their repre. sentatives.
 

 PER CURIAM. « Declared accordingly.