MYRTLE KING AND HUSBAND, B. H. KING, v. MARY E. NEESE, WIDOW OF
J. H. NEESE, C. G. NEESE AND WIFE, AGNES NEESE, C. B. NEESE
AND WIFE, BESSIE NEESE, ARTIS L. NEESE AND WIFE, AUDREY
NEESE, J. HERMAN NEESE AND WIFE, MAGGIE NEESE, D. D. NEESE
AND WIFE, MINNIE NEESE, OPAL TROLLINGER AND HUSBAND, CHAM-
BLISS TROLLINGER, ALMA TROLLINGER AND HUSBAND, W. AUSLEY
TROLLINGER.

(Filed 2 February, 1951.)

1. Judgments § 32—

A judgment is *res judicata* and bars a subsequent action between the
same parties as to all matters actually litigated and determined therein
and also as to all matters which properly could have been litigated and
determined.

2. Same—

It is incumbent upon the party pleading estoppel by judgment to show
that the particular point or question presented in the subsequent action
was embraced in the former action.

3. Same—Judgment relating solely to advancements in personalty held not
to bar subsequent proceeding to determine advancements in realty.

Petition was filed by the administrator under G.S. 28-165 for direction
in the distribution of the surplus of personalty in view of advancements
made by intestate to the heirs and distributees either in money, or land,
or both. Judgment was entered that intestate had advanced money in a
certain sum to certain of the distributees and directing the administrator
to disburse the personalty after adjustment for such advances, with fur-
ther provision that the order was made without prejudice to the interests
of the heirs at law in the realty. There was no allegation that any heir
had been advanced realty over and above the share of realty which might
come to the other heirs. *Held:* The question of advancements of realty
was neither presented nor could it have been properly determined in the
administrator's proceeding for direction in the distribution of the per-
sonalty, and therefore it does not bar a subsequent proceeding by some
of the heirs to charge others in the partition of the lands of the estate
with advancements in realty.

4. Descent and Distribution § 13—

The personalty of the estate is made the primary fund for the equaliza-
tion of advancements of personalty, and the realty is made the primary
fund for the equalization of advancements in realty, and it is only when
and to the extent that there is an excessive advancement in either category
of property over and above the share which may come to the other bene-
ficiaries that such excess may be considered in the distribution of the other
category. G.S. 28-150, G.S. 29-1 (2).

5. Executors and Administrators § 20—

It is the duty of the administrator to make distribution of the surplus
of his intestate's personal property among those entitled thereto, G.S.
28-149, but it is not his function to partition the real estate of his decedent
among the heirs.

APPEAL by petitioners from *Williams, J.,* at the June Term, 1950, of ALAMANCE.

Special proceeding under Chapter 46 of the General Statutes to partition the real property of an intestate among his eight children, and to charge two of such children in such partition with advancements of realty allegedly made to them by the intestate in his lifetime.

The facts are as follows:

1. J. H. Neese, a resident of Alamance County, died intestate 29 December, 1940, owning both real and personal property. He was survived by his wife, Mary E. Neese, and eight children, namely, the petitioner, Myrtle King, and the respondents, C. G. Neese, C. B. Neese, Artis L. Neese, J. Herman Neese, D. D. Neese, Opal Trollinger, and Alma Trollinger.

2. J. Herman Neese qualified as administrator of the intestate before the Clerk of the Superior Court of Alamance County. Inasmuch as the personal property of the intestate was sufficient to pay his debts in full and all costs of administration of his estate, none of his lands were sold for assets. After assignment of a year's allowance to the widow and payment of all debts and costs of administration out of the personal assets of the intestate, the administrator had a surplus of $872.62 in money for distribution among his widow and children. On 23 March, 1942, he filed his final account for settlement with the Clerk of the Superior Court of Alamance County, showing in specific detail all of his receipts and disbursements as administrator and proposing to distribute the surplus of $872.62 among the widow and children of the intestate in these amounts: Mary E. Reese, $52.51; Myrtle King, $252.51; C. G. Neese, $52.52; C. B. Neese, $52.52; Artis L. Neese, $52.52; J. Herman Neese, $52.52; D. D. Neese, $52.51; Opal Trollinger, $52.52; and Alma Trollinger, $252.52.

3. Shortly thereafter, to wit, on 21 April, 1942, the administrator filed a petition against the widow and children of the intestate before the Clerk of the Superior Court of Alamance County under G.S. 28-165 for an account and settlement of the personal estate of the decedent. The petition set forth the matters stated in the two preceding paragraphs of this statement of facts. It further averred that all of the distributees other than Myrtle King and Alma Trollinger had received "advancements, either in money, or land, or both, . . . in the sum of at least $200.00" from the intestate in his lifetime; that the administrator proposed to distribute $200.00 to both Myrtle King and Alma Trollinger in excess of the amounts to be distributed to the other distributees in order to equalize them with the other distributees; and that Myrtle King "protested the proposed distribution, claiming that larger amounts had been advanced to certain of the children and that she was entitled to

a larger sum in order to equalize her." The petition called upon "each . . . of the children as heirs at law and beneficiaries . . . to answer in this cause and furnish the petitioner as administrator and the court . . . an inventory under oath, setting forth therein the real estate and personal property and the values thereof . . . received by such distributees from their father, the said J. H. Neese, during his lifetime," and concluded with this prayer: "Wherefore, your petitioner prays for an account and settlement of the estate committed to his charge and the direction of the court as to how he shall distribute the same and the determination of what advancements, if any, the said J. H. Neese has made to each and every of his heirs at law and distributees during his lifetime and the value thereof, and directing him in what manner and in what amounts and to whom he shall pay out and distribute the balance of the assets in his hands as administrator, and for such other and further relief as in law and equity he may be entitled to."

4. Although they were served with process in the proceeding brought by the administrator for an account and settlement of the estate of the intestate, the widow and children of the intestate did not answer or otherwise enter an appearance therein. No inventories were furnished by any of the children to either the administrator or the court.

5. On 18 January, 1943, the Clerk of the Superior Court of Alamance County entered a final decree in the proceeding brought by the administrator for an account and settlement. The Clerk found as a fact that the intestate made advancements in his lifetime "to each and every of his children, who are now distributees of his estate, other than Myrtle King and Alma Trollinger, in the *sum* of at least $200.00" and directed that the administrator "pay to Mrs. Myrtle King the sum of $200.00 and to Mrs. Alma Trollinger the sum of $200.00 from the assets now in his hands for the purpose of equalizing them with the advancements heretofore made by the said J. H. Neese to each of his other children and distributees, and that in addition thereto, he will hereafter make equal distribution of the balance remaining in his hands for distribution to the widow and all of the children as the distributees of J. H. Neese." The Clerk's decree ended with this provision: "This order and decree is made without prejudice to the several interests of the widow and heirs at law of the said J. H. Neese in and to the real property, which descended upon them from their father, all of which they may own as tenants in common, or otherwise, as may be determined." In consequence of the Clerk's decree, the administrator distributed the surplus of $872.65 among the widow and children of the intestate in the proportions proposed in the final account mentioned in the second paragraph of this statement of facts.

6. Subsequent to the events set forth above, to wit, on 6 March, 1943, the petitioner, Myrtle King, with the joinder of her husband, B. H.

King, brought this special proceeding against the widow of the intestate and the respondents under Chapter 46 of the General Statutes, praying that the lands descended from the intestate be partitioned by sale among his children subject to the dower of the widow and that two of the children, namely, the respondents, C. B. Neese and Artis L. Neese, be charged in the division of the proceeds of the sale with the value of specified parcels of realty as advancements settled upon them by the intestate in his lifetime. The dower of the widow terminated by her death during the pendency of this proceeding. The respondents were served with process in this proceeding, and two of them, namely, C. B. Neese and Artis L. Neese, answered, alleging that all questions relating to advancements to the children of the intestate in real estate as well as in personal property had been litigated and determined in the special proceeding by the administrator for an account and settlement of the personal estate of the intestate, and pleading the decree entered by the Clerk in that proceeding on 18 January, 1943, as a bar or estoppel against the prosecution of the claim of the petitioners that the respondents, C. B. Neese and Artis L. Neese, should be charged in the division of the proceeds of the sale of the lands descended from the intestate with any parcels of realty as advancements allegedly settled upon them by the intestate in his lifetime. The petitioners filed a reply, denying the validity of the factual averments and legal conclusions set out in the answer of the respondents, C. B. Neese and Artis L. Neese. Under consent orders entered by the Clerk of the Superior Court of Alamance County in this proceeding, the lands descended from the intestate were sold for partition among his heirs by designated Commissioners, who still retain the portion of the proceeds of sale representing the shares claimed by the respondents, C. B. Neese and Artis L. Neese, and the issue joined between the petitioners and the respondents, C. B. Neese and Artis L. Neese, was transferred to the civil issue docket of the Superior Court of Alamance County for determination in term time.

7. This issue came on to be heard before his Honor, Clawson L. Williams, the Presiding Judge, at the June Term, 1950, of the Superior Court of Alamance County. The petitioners admitted at that time that the Clerk had entered his decree of 18 January, 1943, under the circumstances set forth above, and Judge Williams rendered judgment upon this admission that the decree so entered by the Clerk constituted a bar or estoppel against the prosecution of the claim now presented by the petitioners that the respondents, C. B. Neese and Artis L. Neese, were chargeable with advancements of realty in the division of the proceeds of the sale of the lands descended from the intestate, and that as a consequence the respondents, C. B. Neese and Artis L. Neese, were entitled to share equally with the petitioner, Myrtle King, and the other children

in the division of the proceeds of the sale of the lands descended from the intestate. The petitioners excepted to this judgment and appealed, assigning these adjudications as error.

*Allen & Allen and Thos. C. Carter for petitioners, appellants.*
*Long & Long for respondents, appellees.*

ERVIN, J. The trial judge based his judgment on the doctrine of *res judicata,* which may be epitomized for the purpose of this particular appeal in these words:

Where a second action or proceeding is between the same parties as a first action or proceeding, the judgment in the former action or proceeding is conclusive in the latter not only as to all matters actually litigated and determined, but also as to all matters which could properly have been litigated and determined in the former action or proceeding. *Distributing Company v. Carraway,* 196 N.C. 58, 144 S.E. 535; *Moore v. Harkins,* 179 N.C. 167, 101 S.E. 564, rehearing denied in 179 N.C. 525, 103 S.E. 12; *Clothing Co. v. Hay,* 163 N.C. 495, 79 S.E. 955; *Tuttle v. Harrill,* 85 N.C. 456.

It appears, therefore, that this precise question arises at the threshold of the appeal: Was the claim now presented by the petitioners that the intestate made advancements of real estate to the respondents, C. B. Neese and Artis L. Neese, in his lifetime actually litigated and determined in the prior proceeding brought by the administrator against the widow and children of the intestate under G.S. 28-165 for an account and settlement of the personal estate of the intestate?

It is incumbent upon a party pleading a judgment in a prior action or proceeding as an estoppel to show that the particular point or question as to which he claims the estoppel was actually in issue and determined in the former action or proceeding. 50 C.J.S., Judgments, section 843. See, also, in this connection: *Jones v. Beaman,* 117 N.C. 259, 23 S.E. 248. His plea of *res judicata* necessarily fails if it rests on mere assertion or speculation. *Argo v. Commissioner of Internal Revenue,* 150 F. 2d 67; *Leicht v. Commissioner of Internal Revenue,* 137 F. 2d 433; *Wolfson v. Northern States Management Co.,* 221 Minn. 474, 22 N.W. 2d 545.

The respondents, C. B. Neese and Artis L. Neese, do not undertake to specify how or by whom the question now presented by the petitioners was raised in the former proceeding, or what decision the Clerk made in respect to it. They merely invoke the record in the prior proceeding to sustain their general averment that such question was actually in issue and determined in the proceeding by the administrator for an account and settlement.

An analytical examination of the record in that proceeding discloses that it does not support this allegation. While the ambiguous averments of the petition of the administrator indicate that he was willing to charge the distributees other than Myrtle King and Alma Trollinger with advancements "either in money, or land, or both" in the distribution of the surplus of the personal assets of the intestate, the decree of 18 January, 1943, makes it plain that the claim now presented by the petitioners, *i.e.,* that the intestate made advancements of real estate to the respondents, C. B. Neese and Artis L. Neese, during his lifetime, was not actually litigated and determined before the Clerk in the former proceeding. The Clerk simply decided that the intestate made advancements of personal property in his lifetime to all of the distributees other than Myrtle King and Alma Trollinger, and directed that such advancements of personal property be charged against the distributees receiving them in the distribution of the personal estate of the intestate. These conclusions find complete support in this provision of the decree itself: "This order and decree is made without prejudice to the several interests of the widow and heirs at law of the said J. H. Neese in and to the real property, which descended upon them from their father, all of which they may own as tenants in common or otherwise, as may be determined."

This brings us to this final question: Could the claim now presented by the petitioners, *i.e.,* that the intestate made advancements of real estate to the respondents, C. B. Neese and Artis L. Neese, in his lifetime, have been properly litigated and determined in the prior proceeding brought by the administrator against the widow and children of the intestate under G.S. 28-165 for an account and settlement of the personal estate of the intestate?

The answer to this question is to be found in the statutory enactments governing the accountability of children for advancements from parents.

G.S. 28-150 provides that "children who shall have any estate by the settlement of the intestate, or shall be advanced by him in his lifetime, shall account with each other for the same in the distribution of the estate in the manner as provided by the second rule in the chapter entitled descents, and shall also account for the same to the widow of the intestate in ascertaining her child's part of the estate."

The second rule in the chapter entitled descents is now embodied in G.S. 29-1. Accountability for advancements is regulated by the proviso to this rule, which is couched in this language: "Provided, that when a parent dies intestate, having in his or her lifetime settled upon or advanced to any of his or her children any real or personal estate, such child so advanced in real estate shall be utterly excluded from any share in the real estate descended from such parent, except so much thereof as will, when added to the real estate advanced, make the share of him who

is advanced equal to the share of those who may not have been advanced, or not equally advanced. And any child so advanced in personal estate shall be utterly excluded from any share in the personal estate of which the parent died possessed, except so much thereof as will, when added to the personal estate advanced, make the share of him who is advanced equal to the share of those who may not have been advanced, or not equally advanced. And in case any one of the children has been advanced in real estate of greater value than an equal share thereof which may come to the other children, he or his legal representatives shall be charged in the distribution of the personal estate of such deceased parent with the excess in value of such real estate so advanced as aforesaid, over and above an equal share as aforesaid. And in case any of the children has been advanced in personal estate of greater value than an equal share thereof which shall come to the other children, he or his legal representatives shall be charged in the division of the real estate, if there be any, with the excess in value, which he may have received as aforesaid, over and above an equal distributive share of the personal estate."

It has been said by a great jurist, *Chief Justice Ruffin*, that the Legislature enacted the proviso "to establish a perfect equality in the division of the intestate's whole estate, real and personal, amongst his children, excepting only, that no property given by a parent to a child is in any case to be taken away." *Headen v. Headen,* 42 N.C. 159. Nevertheless, the personal property is made the primary fund for the equalization of advancements in personalty, and the real property the primary fund for the equalization of advancements in realty. The proviso establishes these two methods of accounting for advancements:

1. A child advanced may be charged in the distribution of the personal estate of his deceased parent with these items: (1) An advancement of personalty; and (2) an *excessive* advancement of realty. *Headen v. Headen, supra.*

2. A child advanced may be charged in the division of the real estate of his deceased parent with these items: (1) An advancement of realty; and (2) an *excessive* advancement of personalty. *Headen v. Headen, supra.*

It is the duty of an administrator to make distribution of the surplus of his intestate's personal property among those named in the statute of distribution. G.S. 28-149. It is not his function, however, to partition the real estate of his decedent among the heirs.

The administrator of J. H. Neese instituted the former proceeding under G.S. 28-165 to obtain a decree from the Clerk directing the distribution of the sum of $872.62, which constituted the surplus of the personal assets of the intestate, among the widow and children of the intestate. The decree of the Clerk determined what each of these persons was

entitled to receive out of the sum in the hands of the administrator. Under the petition in the prior proceeding, the Clerk properly took into account advancements of personalty in determining the amounts of the various distributive shares. He rightly refrained, however, from considering or determining the question now presented by the petitioners.

Under the proviso regulating accountability for advancements, that claim could not have been properly litigated and determined in the former proceeding; for it was not alleged by any party therein that the respondents, C. B. Neese and Artis L. Neese, received any *excessive* advancements of realty from the intestate during his lifetime. *Ludwick v. Penny,* 158 N.C. 104, 73 S.E. 228.

Moreover, the claim of the petitioners could not have been concluded in its entirety in the prior proceeding even if such allegation had been made therein. The proviso regulating accountability for advancements does not make a child advanced in realty chargeable in the distribution of the personal estate of his deceased parent with the full value of his advancements in realty. It renders him accountable in such distribution only for "the excess in value" of his advancements in realty "over and above an equal share . . . which may come to the other children."

Inasmuch as the claim now presented by the petitioners was not and could not have been litigated and determined in the former proceeding, the judgment sustaining the plea of *res judicata* is reversed, and this proceeding is remanded to the Superior Court of Alamance County with directions that such claim be determined and that appropriate action be taken thereon. *Scott v. Life Association,* 137 N.C. 516, 50 S.E. 221.

Reversed.